### BARING & WILLING vs. MOORE and others.

Where, by an order for the resale of mortgaged premises, the master was directed to put up the premises at a particular sum, and resell the same if that amount or a larger sum was bid therefor, and at the sale the premises were struck off to a purchaser for the sum specified, and thereupon the master, acting under the direction of the complainants' solicitor, and without any previous intimation to that effect, insisted upon the immediate payment of the bid in specie, although the purchaser offered to pay the same in good current bank bills, or in good drafts on specie paying banks at Albany, or to pay the amount in specie as soon as it could be obtained from the banks where it could be found; and the master immediately put up the property again upon the terms that specie should be paid down, and no person purchasing on these terms, he reported that the terms upon which the resale was directed had not been complied with; *It was held,* that the conduct of the master was improper and unjustifiable, and that the purchaser was entitled to a deed of the premises, upon payment of the amount of his bid; and the report of the master was set aside, and he was directed to execute to the purchaser a deed upon such resale.

It seems a master is liable for the costs of setting aside his report of sale and of the subsequent proceedings thereon, if his conduct as such master has been grossly improper and oppressive.

January 20. IN January, 1834, a sale, of lot No. 13, in Binghampton, which had been made by a master in chancery, was set aside, and the master was directed to resell the premises, provided the sum of $3500 should be bid therefor upon such resale. From this order the purchaser at the first sale appealed to the court for the correction of errors; and the order of the chancellor was subsequently affirmed by the appellate court. Pending that appeal, the master, acting under the direction of the solicitor for the complainants, who was the brother and partner of the appellant, proceeded to a resale of the premises under the order, notwithstanding he knew of the entering of the appeal. At the time appointed for the sale, O. Tyler, the son-in-law of Whipple upon whose application the resale was ordered, appeared and bid $3500 for the premises, and the same were struck off to him by the master. The complainants' solicitor, and their agent who was also present, then insisted that the master should receive nothing but specie from Tyler for the amount of his bid. And the master, acting un-

der their direction, demanded the immediate payment of the specie; although he was offered the whole amount in current bills, or in a good and available draft on one of the banks in Albany, or that the whole amount should be paid in specie, provided time was given to procure it from Albany, or any other place where it could be had. The master again put up the property, upon the terms of an immediate payment of the bid in specie, although he knew that specie to the amount of $3500 could not then be had at that place; and no person being able to bid the sum required, on those terms, he closed the sale and reported that the condition of the order for resale had not been complied with. The effect of this report of the master, if sanctioned by the court, would be to deprive Whipple of the benefit of his order of resale, and to allow the purchaser to retain the premises for the sum of $2400, which was the amount paid by him at the first sale. Whipple, and Tyler the purchaser, thereupon applied to the chancellor for an order, directing the master to convey the premises to Tyler, the purchaser, upon the payment of the amount of his bid; or for such further or other order as should be proper upon the facts disclosed.

*S. Cheever,* for Whipple and Tyler.

*J. A. Collier,* for the complainants.

THE CHANCELLOR. By the decision of the court for the correction of errors, upon the appeal from the order of the 7th of January last, the former purchaser has no longer any interest adverse to the claim of the petitioners upon the present application; as the amount which they ask to pay into court on the last sale is much more than is to be refunded to him under the order which has been affirmed. It is not necessary, therefore, that I should decide the question whether the appeal bond for costs which was filed in this case was sufficient to stay the proceedings upon the order appealed from; or whether the appellant should not also have given a bond for the use and profits of the premises of which the appellant was

in possession under the former sale, as directed by the 85th section of the article of the revised statutes relative to appeals. (2 *R. S.* 606.) The complainants certainly have no right to object that the sale of the premises pending the appeal was irregular, as the master was acting under the directions of their solicitor. And their agent, the representative of the Mathers, has no right to object, as the solicitor acted under instructions from him. As the amount bid upon the first sale was not sufficient to pay the amount reported due to the complainants, it was for their interest to have the premises resold for a larger sum ; and of course it was for their interest that the order appealed from should be affirmed. It is also for their interest that the second sale should be carried into effect, although their solicitor and their agent attempted to prevent bidding at the second sale, by instructing the master to demand specie. And yet the solicitor has subsequently entered an order to confirm the master's report ; the effect of which confirmation would be to deprive his clients of the balance due them on the decree.

Indeed, it is impossible for me to resist the conclusion at which I have arrived in this case, that the whole of the proceedings on the part of the original purchaser, and of the agent and solicitor of the complainants, have been conducted with a view, in one way or another, to defeat the petitioner, Whipple, of the benefit which was intended to be secured to him by the order of the 7th of January last. The purchaser, as he had a perfect right to do, appealed from that order ; and if he had succeeded on that appeal, his purpose would have been fairly and legitimately effected. But in case he failed on the appeal, if purchasers could be prevented from bidding to the amount of $3500 on the resale, he would still retain the premises at his former bid of $2400. Either through mistake or otherwise, his appeal was so entered as to leave it extremely doubtful whether it operated as a stay of proceedings as to any of the parties ; but more especially as to the complainants who were not named as obligees in the bond for costs. The agent of the complainants, and who had placed the bond and mortgage in this case in the hands of the purchaser at the first sale, and his partner, for collection, then gave written instructions to the

1835.

Baring
v.
Moore.

latter, who happened to be the solicitor on record, to direct the master to proceed to a resale, although they both knew of the pendency of the appeal. The master, under the direction of the solicitor, advertised the premises for sale for the seventh of March ; the order for the resale, authorizing such resale to be made upon a notice of two weeks. No steps were taken by the former purchaser to stay these proceedings ; but he appeared at the time and place of sale, and gave formal notice to those who had come there to bid, that he was the owner of the premises and had the master's deed therefor ; that he had also appealed from the order directing a resale, and that they must therefore purchase at their peril. The solicitor and the agent of the complainants were present also, but made no request to the master to postpone the sale. And as the master proceeded to offer the premises for sale, notwithstanding this notice to the bidders, Tyler, the son-in-law of Whipple, who had the necessary funds, and had come there with the intention of bidding to the amount of $3500, in compliance with the condition contained in the order for the resale, bid that sum ; and no person offering to bid more, the premises were struck off to him by the master. He was then informed by the master, for the first time, that the immediate payment of the amount of his bid, in specie, would be required. The agent, and the solicitor for the complainants, also insisted upon the payment of the amount of the bid, in specie ; although by the terms of the order under which the sale was made, no part of the proceeds of the sale was to be paid to them or to the complainants, but the surplus, after refunding to the former purchaser the amount he had paid upon the first sale, was to be paid into the register's office, to abide the further order of the court. Tyler not being able to obtain the specie at that place, the premises were again put up for sale, upon the terms of the immediate payment of the whole purchase money in specie ; and no person being able to bid to the amount required, and to pay the specie therefor instantly, the master declared the sale closed, and immediately made his report. That report, instead of being sent to the register's office at Albany, where the solicitor of Whipple resided, was, for some cause which is unexplained, sent to the assistant register's office at

New-York; and an order of confirmation was entered thereon at the latter place, by the solicitor for the complainants, four days after the time of such resale. The whole amount of the purchase money was offered to be paid to the master, immediately after the sale, in current bills or in a good and available draft on a bank in the city of Albany; where the surplus proceeds of the sale were to be deposited by the master. And the affidavit of the former purchaser is positive that he neither demanded or required the payment of specie for what was coming to him. The master, therefore, is left without a shadow of excuse for this most unjustifiable proceeding, on his part, to deprive the purchaser on the resale of the benefit of his purchase, and to defeat the whole object of the court in directing a resale of the premises. From the facts disclosed in this case, I am left to the alternative of concluding that he is either wholly ignorant of the duties of his office and has been used as the tool of others, or that he has intentionally acted most iniquitously and oppressively in this matter. There is no pretence that he had any doubts as to the goodness of the bank bills offered to him in payment; or that he feared the draft which was offered on one of the banks in Albany, would not be paid to him, or to the register, upon presentment thereof at the bank. But even that would have been no sufficient excuse for this proceeding; as he might have retained the deed until he ascertained whether the draft was paid, or until the purchaser should have a reasonable time to procure the specie from Albany, or from some other place where it could be obtained. It is well known that for years, bank notes have been nearly the only circulating medium of the country; and that they have been uniformly received by sheriffs and masters, upon sales of property by them, except where special notice was given before the sale that specie would be required at the time of such sale. This court, therefore, in the case of *Neilson* v. *M'Donald*, (6 *John. Ch. Rep.* 201,) characterized the conduct of a sheriff, who had surprised the defendant, at the moment of the sale, with an unexpected demand for specie, as a grievous abuse of power, for the purpose of oppression and extortion. And although the decree in that case was reversed in the court for the correction of errors, on other grounds, none of the judges

differed in opinion with Chancellor Kent as to the impropriety of the sheriff's conduct. Mr. Justice Woodworth says : " The conduct of the officer was altogether unjustifiable, wanton and oppressive ; and it is neither palliated or excused by proving that he acted under the orders of the plaintiff in the execution." The language of Justice Sutherland is equally strong and explicit. And the chief justice, who voted for the reversal of the decree, says : " A reasonable time should have been given to the respondent to obtain the money, particularly when the sheriff could not possibly sustain any loss from the indulgence."

The conclusion at which I have arrived, in this case, is, that Tyler is entitled to a conveyance of the premises which were struck off to him, upon the payment of the amount of his bid ; and that the master should have reported him as the purchaser on the resale. The master's report must, therefore, be set aside. And he must execute a deed to Tyler, and report him as the purchaser at the resale, for the sum of three thousand five hundred dollars ; provided the amount of his bid, with interest thereon from the time of this decision, is paid to the master, or, in case of his absence from his office or place of residence when the purchaser or his agent applies there to make payment, is deposited to the credit of the master in the Broome County Bank, within thirty days after the purchaser or his solicitor in this matter has notice of this decision.

As the master has had no opportunity to be heard upon this application, it would be improper to charge him with the costs thereof at this time ; although it appears that his improper conduct in relation to the sale has rendered the application necessary. I shall therefore reserve the decision of the question of costs until after the coming in and confirmation of the new report, which the master is directed to make of the sale ; when the petitioners are at liberty, upon due notice to the master and to the solicitor of the complainants, to apply for such further directions as to their costs upon this application, as may be just.