1836.

WOODHULL
*v.*
OSBORNE.

---

WOODHULL, executor of Post, deceased *v.* OSBORNE, *et al.*

---

The English practice of opening biddings upon an offer of a greater price has not been adopted in New-York. Nor will the c urt order a re-sale merely because the property will sell for more (except, perhaps, where the mortgagee buys for less than the amount of his mortgage and the mortgagor will remain liable for all deficiency on a re-sale.)

Where a stranger purchases at a chancery sale in good faith, something more must appear than a mere offer of a higher price to induce a re-sale. There must be fraud or misconduct of the master or person controlling the sale—or surprise upon the party interested—or his having been misled as to time and place by the purchaser or some person connected with or having the management of the sale. If the party interested be of full age and under no disability, he cannot be permitted to allege his own negligence or inattention as the cause of his surprise or mistake; and a sale cannot be opened if this appears.

Unless a decree directs the master to subdivide and sell land in parcels, he is not compelled to do so.

---

*August* 15,
1836.

*Mortgagor
and mortga-
gee.*
*Foreclosure.*
*Redemption.*
*Cestui que
trust and
trustee.*

Bill of foreclosure, upon a mortgage made by the defendants Orlando C. Osborne and Margaret Anne his wife of ground at Bloomingdale in the twelfth ward of the city of New-York. A decree for sale was had; and, under it, Master Ruggles sold the property to Elias L. Philip for the sum of nine thousand dollars.

Prior to the master's executing any deed to the purchaser, a petition was presented to the court. It purported to be the petition of John Lorimer Graham, Joseph Lawrence and James B. Taylor, assignees of Stephen Hendrickson; and set forth that in the year one thousand eight hundred and thirty-five and before the first day of June in the said

year the defendant, Orlando C. Osborne, (a broker) was employed by Stephen Hendrickson to purchase real estate for him, and to take the titles in his, Osborne's, name and execute bonds and mortgages for parts of the purchase monies. That the said Orlando C. Osborne, in pursuance of such employment, and acting as broker on behalf of the said Hendrickson, made a purchase of the ground thereinafter described (and being the same premises as were sold to the said Mr. Philip as aforesaid) for twelve thousand dollars; and to secure the payment of a part thereof did, on or about the first day of June in the year one thousand eight hundred and thirty-five, duly execute to the complainant a bond for four thousand dollars payable in one year with interest; and, on the same day, the said Osborne and his wife did execute a mortgage to the same complainant as further security upon a parcel of ground in the twelfth (late ninth) ward of the city of New-York, being the premises alleged to have been purchased by the said Osborne for Stephen Hendrickson. Also, that the said Orlando C. Osborne gave a bond and mortgage upon the same property to William Post, as well as a bond and mortgage to one Jehiel Jaggar. That on the tenth day of November one thousand eight hundred and thirty-five the said Stephen Hendrickson conveyed all his real and personal property to the petitioners for the benefit of his creditors. That the complainant had filed his bill of foreclosure upon the mortgage given to him by Osborne; a sale was decreed; and the said parcel of ground was struck off as above mentioned for the sum of nine thousand dollars. Also, that the purchaser had paid the deposit required by the conditions of sale and would be entitled to a conveyance on the twenty-seventh day of July then instant upon paying the balance of the purchase money. That the sum bidden for the ground by the said Elias L. Philip exceeded the amount due under the decree in the foreclosure suit, but was less, by three thousand dollars, than the cost of it and from seven to nine thousand dollars less than the petitioners could make it produce. And the said Petitioners further shewed that they were willing to pay the principal, interest and costs in the cause or procure a purchaser at a much larger price than

the ground was knocked down for ; and that the difference between the fair market value and the sum at which the premises were sold would be lost to Hendrickson's creditors, unless the Petitioners should be allowed to redeem and the sale be vacated. Also, that the said Stephen Hendrickson had not been made party to the foreclosure suit. Prayer, that the sale be vacated and the Petitioners allowed to redeem.

Mr. *E. Sandford*, in support of the petition.

Mr. *R. Sedgwick*, for the purchaser.

Mr. *James J. M. Valentine*, for the complainant.

*August* 15. THE VICE-CHANCELLOR :—Supposing the petitioners, Hendrickson and his assignees, to have an interest in the mortgaged premises, so as to give them a standing in court ; the first question is, whether enough appears to authorize the court to set aside the sale and permit them to redeem or have a re-sale ?

This question is between the Petitioners and the purchaser Mr. Philip. The mortgagees are indifferent about it : because, in any event, they will be paid in full. On the first hearing of this motion, I was inclined to think it was a case in which the court could, with propriety, set aside the sale provided the Petitioners had a right to make the application.

Upon reflection, however, and looking more attentively into the cases cited; I am of opinion that the circumstances do not warrant the court's interference to disturb the sale.

The English practice of opening biddings upon an offer of a greater or advanced price has not been adopted by us ; nor will the court order a re-sale merely because the property will sell for more money : except, perhaps, in the single instance of the property selling for less than the mortgage debt, the mortgagee or party filing the bill becoming the purchaser and the party, asking a re-sale, remaining liable for the deficiency : *Lansing* v. *McPherson*, 3 J, C. R. 414. Where a stranger or third person becomes the purchaser in

good faith, something more than a mere offer of a higher
price must appear to induce a re-sale:—such as fraud or
misconduct of the master or other person having the con-
trol of the sale—or surprise upon the party interested—or
his having been misled as to the time and place of sale.
Where circumstances of the latter description are relied
upon, the party must show they proceeded from or were
caused by the purchaser or some person connected with or
having the management of the sale. If he be of full age
and under no disability, he cannot be permitted to allege his
own negligence or inattention as the cause of his surprise
or mistake. These principles are fairly deducible from the
cases of *Williamson* v. *Dale*, 3 J. C. R. 290; *Duncan* v.
*Dodd*, 2 Paige's C. R. 99; *Collier* v. *Whipple*, 13 Wend.
224; *Baring* v. *Moore*, 5 Paige, 48.

Here, the purchaser is not a complainant but a stranger
to the parties and to the suit, who, attracted by the public
advertisement of sale, attended and fairly bid for the proper-
ty. He was declared the purchaser; and bound himself to
perform the terms and conditions of the sale. The court is
obliged, on the ground of good faith with such a purchaser,
to carry the sale into effect: unless there are special cir-
cumstances (such as those which have been adverted to)
forbidding it.

The petition attempts to put the claim to relief upon the
ground that the Petitioners were lulled by the promise of
the complainants not to proceed to a decree and sale without
first giving them notice; and that the sale took place with-
out their being at all apprised of it. So far as such pro-
mise is alleged to have been made, it is expressly denied
by the complainants; and as to the Petitioners or Hen-
drickson not being apprised of the time of sale, it appears
to me it was clearly the result of their own remissness or
inattention or that of Osborne, the mortgagor, who, in the
transaction of purchasing the property and taking the title
in his name and giving the mortgages, is clothed with the
character of agent or trustee for Hendrickson. According
to Osborne's statement, he was fully aware of the master's
advertisement of sale, he answered enquiries respecting
the property and the sale, and, if Hendrickson did not re-

1836.

WOODHULL
*v.*
OSBORNE.

ceive information of the fact that it was advertised, it was his own fault or that of his agent. Knowledge of the agent in such case may be considered the knowledge of the principal. And it is not sufficient that Osborne himself supposed the property would not be sold or, if sold, that the sale would be a mere formal one and, resting under this impression, that he diverted bidders and did not attend. In what way and from whom he got the impression does not appear. It is not traced to the master or the complainants in the cause ; and nothing is said to induce a belief that it originated with or proceeded from any act, promise or declaration of any one having the control or management of the sale.

I am of opinion, therefore, that the circumstances of this case do not bring it within any of the principles upon which this court has heretofore interposed to deprive an honest purchaser at a master's sale of the benefit of his bargain. It may be a serious loss and sacrifice of the property, but the parties having or supposing they had an interest in it, should have been more vigilant and attentive to the result of the foreclosure which they knew had been commenced.

The manner of selling the property, in one entire parcel, is objected to as irregular ; and it is said, the master ought to have divided it into lots and sold only so many as were necessary to satisfy the mortgage debt. It is a sufficient answer to this objection that the property was purchased in one parcel, described as containing four acres, mortgaged as such, and, by the same description, was decreed to be sold. If the parties wished a subdivision into lots for the purpose of a sale, they should have attended the entry of the decree and asked for directions to that effect or have requested the master, before the sale, to make the subdivision. Unless there were directions in the decree or a request from the parties, the master was not bound to take upon himself the duty of laying the land out into lots ; nor were the mortgagees under any obligation to do so. They were at liberty to sell it as it was mortgaged : in one parcel ; although, if they had apprehended a deficiency and thought it to their own advantage, they might have asked leave for the master to sell in lots according to a survey

and map to be procured at the expense of the estate. Whatever disadvantage there was, if any, in selling in an entire parcel, must now be attributed to the neglect of the parties in interest, other than the mortgagees, and cannot affect the rights acquired by the purchaser at the sale.

If these views of the case are correct, it is unnecessary to consider the objection raised on the part of the purchaser against disturbing the sale: that the petitioners—or Hendrickson in whose place they stand—have no interest in the property and can claim no benefit from it.

It appears to me, however, that the transaction between Hendrickson and Osborne, as disclosed in the petition, is within the 1 R. S. 728, § 51, which forbids the raising of a trust in favor of a person paying the consideration money upon the purchase of land, where he voluntarily allows the grant or conveyance to be made to or in the name of another. This provision in the statute was doubtless intended to prevent the practice resorted to in this instance. The law now considers that there is no reason why a person, who is able to advance money for the purchase of landed estate, should allow the title to be taken for his benefit in the name of another, except for some sinister or fraudulent purpose; and it will not allow him to claim any benefit of the transaction in the shape of a resulting or implied trust.

In the present case, Osborne buys the property; takes the title in his own name; and gives a mortgage for a part of the purchase money, although merely broker or agent for Hendrickson, who advanced the money actually paid. This is not such a transaction as will raise a trust in favor of Hendrickson.

But while the law prevents him, who will thus advance his money and permit the title to be taken in the name of another, from deriving any benefit from the purchase, it takes care that his creditors shall not suffer by his parting with his money; and hence the provision in the next two sections, raising a trust in the land in favor of the creditors of the person paying the consideration money, and also in favor of the person himself where a conveyance is taken

in the name of another against his consent or without his knowledge and in fraud of his rights : § 51, 52. This case is not within the principle of either of the last mentioned sections. Hendrickson's creditors are not parties to this application, nor are they shown to be interested.

The petition must be dismissed.