Thompson, J.
In considering the case presented by this appeal, I shall pass by any examination of the peculiar nature of the bill brought in the court below, because the argument of the cause appears to have embi'aced as broad a scope as if it had been a bill filed by a mortgagor to redeem his mortgage. And in this view of the subject, Several questions have been raised, and urged before this court, for the purpose of showing, that the equity of redemption, claimed by the respondent, ought to be consf *587 dered as extinguished. The conclusion to which I have arrived, after an attentive examination of the ease, renders it unnecessary for me to take notice of all the points which have been raised. I shall confine myself to those which relate to the conduct of Abel Belknap, to induce the appellant to make the purchase from Brush, and the subsequent agreement between Belknap, Niven, and Brush, which was afterwards carried into execution, by a delivery of the possession of the mortgaged premises to the appellant.
The difficulty here presented arises from the statute of frauds, which declares, that uo interest in land shall be granted, or assigned, but by deed or note in writing. This is, undoubtedly, a wise and beneficial law. But, in the language of adjudged cases upon if, it may be justly said, that to allow a statute having the prevention of fraud for its object, to be interposed in bar of the performance of a parol agreement, in part performed, would be evidently to encourage one of the mischiefs which the legislature intended to prevent. It is therefore, an established rule, that a parol agreement, iu part performed, is not within the provisions of this act. (Fonb. 182. note. 1 Ves. jun. 333.) The relief against the statute in these cases of part performance, is founded on the fraud and deceit which usually, characterize the circumstances. Whether it was expedient, in the first instance, to make fraud a ground for giving relief, so as to enforce agreements against the express provisions of the statute, is now a useless inquiry, as there is hardly any rule of equity better established on- authority. (Roberts, 133. 3 Atk. 3. and note.) It is admitted, that these acts of part performance must be clear and unequivocal, and such as cannot, rationally, be presumed to have been done, unless on account of the agreement. (3 Atk. 4.) When the act of performance is taking possession, it must be done as owner of the estate, and which the party would not have *588 dono had he not considered himself in that light. (2 Bro. C. C. 561.)
Taking the rules above laid down as settled and in-eontrovertable principles, governing courts of equity, I shall proceed to examine and test the facts, in the case before us, by those rules. The conduct of Abel Belknap, when application was first made to him by the appellant, to purchase the farm, had a direct tendency to deceive and mislead ; unless his intention was to assist the appellant to procure an absolute title to the farm. No part of the testimony will warrant an inference, that Niven, at this time, knew any thing respecting the encumbrances. He applied to Belknap, as owner, with a view of making an absolute purchase. On such application, he was informed, by Belknap, that he had not the power of disposing of the farm ; that he had given it up to John Brush, in satisfaction of a mortgage or mortgages held by him, and that Brush had the entire disposal of it; and to account for his being in possession still, Belknap added, that Brush had permitted him to remain there, for a year or more, until he could look around, and fix himself somewhere else. What then must have been the impressions of Niven, when he applied to Brush ? They could have been none other, than that he was the proper and only person wdio could give a good and sufficient title for the farm. The application to him was not in his capacity of mortgagee, but as absolute owner, according to the representation of Belknap. That Niven’s intention and object was to purchase an absolute and indefeasible estate, and not a mere mortgage interest, cannot be doubted. This conclusion is irresistable, both from the parol evidence and the written documents. It was said, by the respondent’s counsel, that the evidence of the parol agreement set up, was not full and explicit; that the witness, Free-love Brush, by whom it was proved, spoke only as to her ■impressions on the subject, which, after such a lapse of *589 time, were not entitled to much weight. This testimony, in examination, I apprehend, will be found not liable to this objection. The witness states explicitly, that Abel Belkap and Niven came to her father, John Brush, and that a bargain was thereupon made, between her father an(j Niven, in the presence of Belknap, by which it was agreed, that Niven would purchase the farm', for about 1,000?. In another part of her examination, she says it appeared to her to be clearly understood by Belknap, as well as the other parties, that her father was to convey to the complainant the said farm absolutely, and that it was not to be subject to any claim or right of redemption, on the part of Belknap. When she afterwards speaks of her impressions, it is with respect to Belknap's reasons, for wishing the farm sold at private sale rather than at public auction. Though it does not appear positively, from this testimony, that Belknap took any active agency in this negotiation ; yet his presence and silence are equally efficacious and binding upon him, if the complainant was thereby misled and deceived. There is an implied, as well as an express assent. As where a man who has a title, and knows of it, stands by, and either encourages or does not forbid the purchase, he, and all claiming under him, shall be bound by such purchase. (1 Fonb. 161.) It is very justly and forcibly observed, by a writer on this subject, (Roberts, 130.) that there is a negative fraud in imposing a false apprehension on another, by silence, where silence is treacherously expressive. In equity, therefore, where a man has been silent, when, in conscience, he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent. In pursuance of this agreement, Brush executed and delivered to the appellant an absolute deed of conveyance, in fee simple, for the farm, for the consideration of1,040.? which appears to be the sum due to Brush on his several mortgages. If it was not the understanding of all parties, that an absolute and indefeasible estate was to be conveyed, a question very naturally arises: — what could have induced Brush to execute a deed with full and ample covenants ? If, as is contended on the part of the respondent, the premises were worth much more than the debt due to Brush, it is a little extraordinary that he should prefer exposing himself to a responsibility upon wbat have been termed extraordinary and unusual covenants, rather than resort to the mortgaged premises, in the ordinary way by a foreclosure of his mortgages. Had Brush given a bare quit-claim, or received any benefit from the sale, beyond the debt really due to him, it might have afforded a presumption of a speculation on the necessities of Belknap. But, having in his own hands the means of satisfying his demand, without exposing himself to any future responsibility, his executing such a deed as he did can be accounted for in no other way, if we allow him the ordinary prudence of man, than from a full conviction of his not exposing himself to any hazard, by reason of any claim on the part of Belknap, to the equity of redemption. This conviction must have been produced by the acts and conduct of Belknap, which must have been understood as amounting to a relinquishment of all claim to the premises. If the inference I have drawn from the special provisions in this deed be just, it is a species of evidence derived from a written document, and not subject to the fallibility ascribed to parol evidence. This deed does not contain a separate and distinct covenant to indemnify the appellant against any outstanding equity of redemption, as I understand the respondent’s counsel to suggest. The covenant is general, to indemnify against any claim, demand, right, title, interest, or equity of redemption, thus-only enumerating this among other encumbrances that might exist against the farm. This was, probably, a mere formula adopted by the conveyancer, without any instruction from the par *590 ties to the deed. But it is said that it is improbable that Belknap was a party to, or assented to this sale, because he derived no benefit from it; the purchase money being only sufficient to satisfy the mortgagees. It is not, I think, correct, under the circumstances of the case, to say, that Belknap derived no benefit from this sale. The value of the mortgaged premises, according to his own estimate, but little exceeded the sum due to Brush. The interest was continually and rapidly swelling the demand ; his farm was liable^to be sacrificed, by sale at public auction ; the debt increased by the addition of the costs and expenses necessarily attending the proceedings, and he still remaining personally responsible, on his bond, for all deficiencies. It was surely of some benefit to him to be extricated from such a state of things, and of this he appeared sensible; for we find him, when about leaving the premises, declaring to Isaac Belknap, apparently with much satisfaction, that he had now got out of his difficulties and embarassments, for he had sold his farm, and was going to live at Norwalk. There was no pre-tence with him, at that day, that he had been hardly or unjustly dealt by, or that he still claimed any interest in the farm. It is, I think, fairly to be collected, from the mass of testimony relative to the value of the premises, that it would, very little, if any, at the time of the purchase by the appellant, have exceeded the consideration money paid. Great diversity of opinion appears ■ among the several witnesses examined on this subject. The most satisfactory estimate, however, I think, is that which is to be collected from the testimony of John Dickinson. He says, that about this time he was in treaty with Abel Belknap, for the purchase of the farm ; that lie offered 1,050k for it, and had nearly completed a bargain at that price, but it was broken off, owing to a difference about the payment of interest. Here we have nearly ascertained the opinion of Belknap himself, as to the valise *591 of the farm, which wras but a few dollars more than the consideration made by the appellant. We come now to that part of the case which may bo considered as the con-smnation of the contract: I mean the surrender of the possession to the appellant. Here we have the acts of Belknap, which, when accompanied with the previous circumstances, and his subsequent declarations, speak a language not to be misunderstood.
The whole current of the evidence, irresistibly forces on the mind the conclusion, that Niven took possession as absolute owner of the farm. Bdknap, shortly after declared to one of tho witnesses, that he had now sold his farm, and got out of his difficulties. This declaration shows conclusively, that ho considered himself a party to the sale, and is utterly inconsistent with any pretended claim to the equity of redemption, now set up. No complaint was then made that this was the result of necessity, and against his will. He permitted the appellant to go on making valuable improvements, without the least suggestion of any remaining claim. This is not simply a case of part performance ; so far as performance is connected with the contract, it has been completed. The full consideration money was paid, though not to Belknap, himself, yet to his use and benefit, and the possession of the farm surrendered to the purchaser. If, as is now set up on the part of the respondent, Bdknap intended to retain his right to the equity of redemption, the character of fraud is stamped upon his whole conduct; and no one ought to be permitted to profit by the mistakes which have been produced by this fraud and misrepresentation. In opposition to all this, however, it has been urged, that the inference to be drawn from the written evidence in the cause, is, that Niven considered himself as purchasing only a mortgage interest, and that Belknap had not parted with his equity of redemption. The documents referred to are the covenant in Brush’s deed against any equity *592 of redemption, and the assignment of the mortgages to Niven. With respect to the first, I cannot think it affords the conclusion that has been attempted to be drawn from it. Had the covenant been special, pointing to this particular equity of redemption, the inference might be just. But being generabas it is, it furnishes no more evidence of an acknowledged outstanding equity ofredemption, than of any other encumbrance falling within the terms used in the covenant. The assignment of the mortgages to Niven appear to me entitled to more consideration; yet I cannot think it a controlling circumstance. It might have been done with a view to guard against intervening encumbrances, which mighthave been created by Belknap. Whatever the object was, the measure must have received the assent and approbation of Belknap, and was not done for the purpose of holding a rod over him. He could not consider himself as remaining personally liable for this mortgage money, or we .should not hear him declaring that he had now got rid of his difficulties and embarrassments. If Niven’s purchase extended only to Brush’s interest in the mortgages, the assignment was amply sufficient, of itself, to transfer that right, and the deed executed by Brush was useless. This deed speaks a language directly repugnant to the idea of a mere assignment of a mortgage interest, and no possible inducement to its execution by Brush can be assigned, unless an absolute estate was intended to be granted. It cannot, I think, be doubted, but that the respondent is to be considered in the character of a purchaser with notice; and, of course, the same rules oflaw and principles of equity may be applied to him which might have been applied to Abel Belknap, his father, from whom he purchased.
From this examination of the testimony, I think I am warranted in concluding, that the following facts are established : That Niven’s object and intention, from his *593 first application to Belknap, and throughout the whole transaction was to make an absolute purchase of the farm. _ 77 , I hat Belknap represented to him, that Brush was the proper and only person to apply to for that purpose. That the contract between Brush and Niven was for an absolute purchase, and not a mere mortgage interest. That Belknap either assented to the contract, or by his representations and conduct induced Niven to believe he should be safe in a title derived from Brush.(a) That Belknap, in pursuance of this contract, surrendered the possession to Niven, as absolute owner, and suffered him to go on making improvements for several years, without the least intimation of his having any claim to the equity of redemption now set up. All which, in my judgment, are sufficient to take the case out of the statute of frauds, and presents a strong claim, on the part of the appellant, to the equitable relief prayed for in the court below.
I am of opinion, therefore, that the decree of the court of chancery ought to be reversed,
This being the unanimous opinion of the court,- it was thereupon ordered, adjudged, and decreed, that the decree of his honour the chancellor be reversed. And it was further ordered, adjudged, and decreed, that the respondent,- Chauncey Belknap, do, without delay, execute and deliver unto the appellant, Daniel Niven, a competent release of all his, the said Chauncey Belknap's right, title, interest and claim, in and to the lands and premises in the pleadings in this cause mentioned, sufficient to quiet the said Daniel Niven, his heirs and assigns, in the peaceable and full enjoyment thereof, against any right or claim of the said Chauncey Belknap, or his heirs, of, in, or to the said lands and premises, the forms of which re *594 lease shall be settled by one of the masters in chancery, *n CaSe Part*es disRg1'00 respecting the same. And in case this decree cannot be executed, by reason of death, or for any other cause, then it was further ordered, adjudged, and decreed, that the chancellor, on application f0r febat purpose, award a perpetual injunction in favour of the appellant, according to the prayer of the said bill, and the effect of this decree. And it was further ordered, adjudged, and decreed, that the respondent, Chauncey Belknap, pay unto the appellant, Daniel Niven, his costs in the court of chancery, to be taxed by a master, and that the pleadings and proceedings sent here from the court of chancery be remitted to the court of chancery, with this decree, to be executed by that court.
Judgment of reversal.

 It is a well settled principle, however, that chancery will not suffer any agreement in a mortgage to prevail, which shall change it into an absolute conveyance upon any condition or event whatever. Clark v. Henrypn court of errors; 2 Cowen 324.

 9 Vesey.jun. 260. Cotes v. Trecoihick