Hall *v.* Fisher.

ESSEX SPECIAL TERM, October, 1849.   *Paige*, Justice.

ELIPHALET HALL and EPHRAIM HALL *vs.* CALVIN FISHER and others.

THE SAME *vs.* CHARLES MILLER and others.

A payment in current bank bills, if accepted by the sheriff without objection, is a good payment for the purpose of redeeming real estate sold on execution.

Although it is not made the duty of a sheriff, upon a party coming to redeem premises from a sale upon execution, to compute the interest on the purchaser's bid and to ascertain the precise amount to be paid by such party; yet if he, or his duly authorized special agent, voluntarily undertakes to make the computation, and in so doing commits an error, and thereby misleads the party, who makes no computation himself, in consequence of which he makes a short payment, and the sheriff accepts the same as a payment in full, the redemption will be held valid and effectual; notwithstanding the sum paid by the redeeming party is less than the amount actually due.

A court of equity has the power to accord relief to the owner of real estate coming to redeem his lands sold on execution, from the consequences of a mistake of fact, on the part of the sheriff or his special agent, by means of which mistake such party has been misled, and has thereby failed to comply with some one of the requirements of the redemption act.

A deputy sheriff who sells real estate upon an execution, has the right to authorize another person to compute the amount necessary to be paid in order to redeem the land, and to direct the redemption money to be deposited with such person, as his agent.

Where, after a party has made a valid redemption of real estate sold on execution, the sheriff executes a deed thereof to another person, although the redeeming party may have a remedy at law, yet he has a right to come into a

Hall *v.* Fisher.

court of equity to have the sheriff's deed set aside and cancelled, as a cloud upon his title.

If, for the purpose of redeeming land sold on execution, a party pays to the sheriff the sum computed by the latter to be the amount due, and necessary to be paid, in order to effect a redemption, but owing to a mistake or error on the part of the sheriff, in making the computation, the sum paid is 30 cents less than is actually due; *It seems* that the payment will be valid, and that it comes within the principle of *de minimis non curat lex.*

Where a purchaser of real estate sold by a sheriff on execution, being the fourth part of an ore bed, of which such purchaser already owned three-fourths, with knowledge of an attempt having been made by the judgment debtors to redeem the premises, and that the latter considered the redemption valid, failed to give them notice of his objection to the redemption, in time to enable them to procure a redemption through a friendly creditor; and stood by for several years and suffered the judgment debtors to expend money on the premises, in the erection of valuable buildings, &c. under the belief that they were part owners of the property with him, without making known to them his own claim to the debtors' share of such property, under his purchase at the sheriff's sale, in the meantime recognizing them as co-tenants of the lot; *Held,* that these circumstances ought to be regarded, in a court of equity, as a ratification of the redemption, and a waiver of any irregularity or defect therein ; and that principles of equity would not permit such purchaser afterwards to assert his title, as against the judgment debtors.

*Held also,* that under these circumstances, the court ought to go further than merely to compel the purchaser at the sheriff's sale, or his assignees, to pay the judgment debtors a compensation for their improvements; that it would hold the purchaser estopped, in equity, as against the judgment debtors, from exercising any legal right whatever over the latter's share of the property.

If a person maintains silence, when in conscience he ought to speak, equity will debar him from speaking, when conscience requires him to be silent.

IN EQUITY. An original bill was filed by the plaintiffs in November, 1844, in the court of chancery, against Henry Fisher and Calvin Fisher, to compel them to convey to the plaintiffs all their right and interest in one equal undivided fourth part of all the iron ore on lot No. 42, in a patent of land known as the iron ore tract in Moriah, in the county of Essex, &c. with the privilege of all necessary roads to and from the ore, &c. and to covenant in the deed of conveyance against their own acts; and to validate and quiet the title of the plaintiffs to said premises by virtue of a redemption thereof claimed to have been made on the 10th of August, 1839, from a sale by the sheriff of Essex county, on the 1st of September, 1838, by virtue of an

Hall v. Fisher.

execution against Joseph Hall, Ephraim Hall, &c. Calvin Fisher bid off the premises at the sheriff's sale, for his father, Henry Fisher, for $39. The sheriff, on the application of Henry Fisher, executed and delivered to Calvin Fisher, on the 21st of January, 1843, a sheriff's deed of the premises, and Calvin, on the 5th of April, 1843, conveyed said premises to his father. Henry Fisher, previous to such conveyance, owned the whole of lot 42, and three-fourths of the ore on such lot. Henry Fisher died on the 13th of May, 1847, having previously devised the whole of lot 42, and all the ore thereon, to his two sons, Calvin and Austin Fisher. Calvin and Austin, subsequently, on the 10th of August, 1847, conveyed to Charles Miller, the whole of lot 42, and all the ore on the lot. Charles Miller, on the 17th of August, 1847, conveyed the same to Eli C. Clark; and Clark, on the 20th of August, 1847, conveyed to Oscar Tyler and Edward Artcher, two-thirds of the premises. Clark, Tyler and Artcher, executed a mortgage on the premises, for the purchase money, to Miller. On the 1st of October, 1847, the plaintiffs filed a bill in the nature of a bill of revivor and supplement against Miller, Clark, Tyler and Artcher. Miller, Clark, Tyler and Artcher purchased the one-fourth of the ore bed sold by the sheriff, with full notice of the claim and rights of the plaintiffs, and subject to such claim. At the time of the recovery of the judgment against Joseph Hall and Ephraim Hall, they owned the one-fourth of the ore bed sold by the sheriff, and Henry Fisher owned the remaining three-fourths. After the recovery of such judgment, and on the 6th of August, 1838, Ephraim Hall conveyed his interest in the said one-fourth of the ore bed to Eliphalet Hall. Ephraim Hall, subsequently, and after said redemption, purchased Joseph Hall's interest in the said one-fourth of the ore bed. Previous to the 10th of August, 1839, Eliphalet Hall called upon William H. Meacham, the deputy of the sheriff of Essex county, who sold the one-fourth of the said ore bed, and in behalf of himself and of Joseph Hall, applied to said Meacham to redeem the said premises from such sale, and pulled out his wallet for the purpose of paying the money. Meacham then told him he had no means of as-

Hall v. Fisher.

certaining the amount, unless he went to the clerk's office of the county, to get the certificate of sale; and he told Eliphalet Hall to go to Cuyler, the county clerk, and get him to find the certificate and to calculate the amount of interest, and to pay Cuyler the money and take his receipt for the same, and to bring the receipt to him, Meacham, and he then would give him, E. Hall, one in exchange. E. Hall, in accordance with the directions of Meacham, called on Cuyler, at the clerk's office, on the 10th of August, 1839, and told Cuyler that Meacham had sent him there, and communicated to Cuyler the directions of Meacham. Cuyler, in compliance with such directions, took the certificate of sale and calculated the interest due, at the rate of 10 per cent, and informed E. Hall of the amount. E. Hall then handed to Cuyler $43 in bank bills, and Cuyler handed him back the change in silver. The amount of interest, according to the computation of Cuyler, was $3,38. He made a mistake of 30 cents in his computation ; the true amount of the interest being $3,68. Cuyler then gave E. Hall a receipt, which stated that he had received from E. Hall $42,38, on the 10th of August, 1839, for the redemption of the land, subject to the order of Meacham or Calvin Fisher, or to be paid to them when called for. E. Hall, on the 17th of August, 1839, gave to Meacham, Cuyler's receipt, and in exchange for it Meacham gave E. Hall a receipt for the same, stating its contents, and also that the money paid by Hall was received in deposit for the purchaser, Calvin Fisher, or the sheriff of the county. Meacham afterwards, in the month of October, 1839, delivered to H. Fisher the receipt Cuyler gave to E. Hall, and told him it was Cuyler's receipt for money deposited to redeem the ore bed property, and that he could get the money by presenting the receipt to Cuyler. In July, 1844, E. Hall tendered to H. Fisher $60, and demanded from him a conveyance of the premises. H. Fisher refused to receive the money or to convey. The one-fourth of the ore bed was proved to be worth $2500. E. Hall made erections and improvements on the premises, connected with the raising of iron ore, between 1839 and 1842, of the value of about $1000. E. Hall, in June, 1842, took from Henry Fisher

Hall *v.* Fisher.

a lease for three years of lot 42, and of the three-fourths of the ore bed belonging to him, H. Fisher. By the lease, E. Hall agreed to pay H. Fisher, for the use of the farm, $85 a year, and to pay for three-fourths of the ore which he might dig or raise from the ore bed on the lot, 25 cents per ton for lean ore, and 50 cents per ton for forge ore. E. Hall left the possession of the ore bed in 1844 or 1845. Neither Calvin nor Henry Fisher ever called on Cuyler for the redemption money left with him by E. Hall, or received the same. Nor did H. Fisher return Cuyler's receipt given to him by Meacham in October, 1839.

*Geo. A Simmons*, for the plaintiffs.

*H. H. Ross*, for the defendants.

Paige, J. It is insisted by the counsel for the defendants that the redemption attempted by the plaintiff, E. Hall, was void both at law and in equity, because he failed to pay the precise sum required by law to be paid, (the bid and 10 per cent interest;) and because the redemption money was not paid personally to the purchaser or to the officer who made the sale. It is contended that either a payment short of the true sum, however small the deficiency, although the shortness of the payment arose from an accident, or a mistake of fact, or a payment to a third person for the officer, although previously authorized by such officer to receive it, vitiates the redemption. The grounds assumed are that a strict and literal compliance with all the requirements of the statute, is in all cases a condition precedent to a valid redemption; and that the sheriff has no power to dispense with any of such requirements. The counsel of the defendants also make two additional points, viz. 1. That the redemption was invalid, because the payment was made in bank bills; and 2. That the plaintiffs were estopped from denying Henry Fisher's title to the whole ore bed, by the lease of lot 42, taken from him by E. Hall. Neither of these additional points can be sustained. The current of authorities in

Hall *v.* Fisher.

this state is against the first point. It has been the general practice of sheriffs and masters in chancery to receive payment in current bank bills, of bids on sales of property. And such payments have uniformly been held by the courts of this state valid payments. (4 *Cowen*, 553. 5 *Paige*, 52. 6 *John. Ch. Rep.* 201.) And it has been expressly decided that a payment in current bank bills, if accepted by the sheriff without objection, is a good payment for the purpose of redeeming real estate sold on execution. (*Ex parte Becker*, 4 *Hill*, 616.) The other point, if admissible under any circumstances, as a defence to a bill filed in a court of equity for equitable relief, is not authorized by the evidence. The lease accepted by E. Hall from H. Fisher, in June, 1842, embraced only three-fourths of the ore bed on lot 42. This is not only apparent from the face of the lease, but it is also expressly admitted by Henry Fisher, in his answer, fol. 21. The only questions, therefore, which the case presents are, whether the short payment, or the payment of the redemption money to Cuyler, instead of the sheriff or his deputy, Meacham, invalidated the redemption.

I think the evidence establishes the allegation that Cuyler, in computing the amount required by law to be paid on redeeming the property, and in receiving from E. Hall the redemption money, acted as the duly authorized special agent of Meacham, the deputy sheriff. Cuyler, in calculating the interest, made a mistake of 30 cents, either in the multiplication, or in the addition or subtraction of figures. E. Hall made no computation himself; and it is a fair inference from the evidence that he relied entirely on the computation of Cuyler, as being in all respects correct; and was thus misled thereby in making a payment short of the true sum required by law to be paid on a redemption of the property. The evidence clearly shows that E. Hall, when he paid to Cuyler $42,38, the sum required to be paid according to the computation of the latter, believed that that was the true sum necessary to be paid. This sum was received by Cuyler as a full and sufficient payment to Meacham to make a valid redemption. The acts of Cuyler were subsequently ratified by

Meacham, when he accepted from Hall, Cuyler's receipt, and gave to him his own receipt in lieu of Cuyler's.

These being the facts established by the evidence, it is proper to inquire how far the decisions of the chancellor made in this suit, on the motion to dissolve the injunction originally granted therein, and on the motion to amend the bill of complaint, embrace the questions now presented. When this case was first before the chancellor, (1 *Barb. Ch. Rep.* 53,) he distinctly held that the deputy sheriff had a right to authorize the deposit of the redemption money with the county clerk as his agent. And he also held that if the county clerk had been constituted by Meacham his special agent to receive and hold the redemption money for him, as a mere depositary, and if E. Hall had actually paid to the county clerk, as such agent, the whole amount of the bid, with interest at the rate of 10 per cent per annum from the day of sale, the premises would have been regularly and legally redeemed from the sale. This decision negates the proposition of the counsel of the defendants, that the redemption money should have been paid personally to the purchaser, or to the sheriff or his deputy, Meacham.

As to the remaining question in the case, whether a short payment, in consequence of a mistake of fact of the officer who made the sale, will vitiate the redemption, the chancellor, in 1 Barbour's Ch. Reports, p. 57, says, " where the sheriff himself makes a miscalculation of the interest, and thereby misleads the party coming to redeem, there may be good reason for holding the redemption valid and effectual, even at law ; and for charging the sheriff with the deficiency arising from a short payment through his miscalculation exclusively." And in 3 Barb. Ch. Rep. 639, on the motion to amend the bill in this suit, the chancellor says : " The amendments are sworn to, and it appears to be reasonable to allow them to be made. For they may be essential to the setting aside of the sheriff's deed as a cloud upon the complainants' title. It may be proper to say, however, that if the facts are proved as now sworn to by the complainant, the redemption was probably valid ; even if Cuyler made a mistake of a few cents in computing the inter-

est, so that he gave back too much change to the complainant, and did not retain the full amount which he should have received. For if Cuyler was the agent of the sheriff to make the computation of interest, as well as to receive and hold the redemption money for him, the plaintiff may have a perfect defence to any suit at law which may be brought against him to recover the possession of the property." These remarks of the chancellor indicate very clearly his opinion in favor of the validity of the redemption by E. Hall. The facts set forth in the bill, in relation to the redemption, have been established by the proofs. The chancellor says if these facts are proved, "the redemption was probably valid;" and "the plaintiff may have a perfect defence to any suit at law brought against him to recover the property." The chancellor must necessarily have come to the conclusion that if these facts were proved, the redemption was valid either at law or in equity; otherwise he could not have allowed the plaintiff to amend his bill as moved for by him. For if the bill as proposed to be amended would not show on its face any ground for relief, it was an idle ceremony to protract the litigation by allowing the amendments asked for. I shall therefore regard the decisions of the chancellor as embracing the question as to the effect of the short payment in this case, upon the redemption, and as substantially deciding that as the short payment was exclusively the consequence of a miscalculation of the sheriff's special agent, it did not vitiate the redemption. The decisions of the chancellor are binding upon this court. If they are erroneous, the only appropriate tribunal for awarding relief is the court of appeals. If the redemption of E. Hall was valid at law, although he had a remedy at law, he nevertheless had a right to come into a court of equity to have the sheriff's deed, given to Calvin Fisher, set aside and cancelled, as a cloud upon his title. (5 *Paige*, 501. 9 *Id.* 388. 6 *Id.* 262.) The supreme court does not, in the exercise of its common law jurisdiction, order deeds to be cancelled. And it is questionable whether it has any power to make such an order. (7 *Wend.* 469. 3 *Cowen*, 35, 39.) As there is nothing on the face of the sheriff's deed to Calvin Fisher

to show its invalidity, there can be no question as to the power of a court of equity to remove it, as a cloud on the plaintiff's title. (9 *Paige,* 388.)

The provision of the revised statutes (1 *vol. p.* 379, § 73) does not apply to the mere authority given by a sheriff or his deputy to deposit money paid on a redemption upon an execution, with a third person, or a bank, as his servant or agent. That section evidently refers to a regular deputation of a person to do a strictly official act, such as the service of process, &c.

It is earnestly insisted that the sheriff has no power to dispense with any of the requirements of the statute, and that a strict and literal compliance with every one of such requirements is in all cases a condition precedent to a valid redemption. And it is insisted, if there is a failure to comply with a single requirement of the act, that equity has no power to give any relief. This proposition, if admitted in its fullest extent, would deprive the redeeming party of all relief, even in cases where his failure to comply with some requirement of the statute was wholly in consequence of the fraud or waiver of the purchaser. For if a strict performance of all the conditions prescribed by the act is indispensably necessary to a valid redemption, neither the fraud or express waiver of the purchaser can excuse the non-performance of the redeeming debtor or creditor. This would be the legitimate result of the adoption of the rigorous proposition of the counsel of the defendants as a legal principle. The decision in the *Bank of Vergennes* v. *Warren,* (7 *Hill,* 93,) shows that the proposition, to the extent insisted upon, can not be admitted. In that case it was decided that the purchaser may dispense with the performance of any of the conditions prescribed by the statute. (18 *Wend.* 599.) In *Dickinson* v. *Gilliland,* (1 *Cowen,* 481,) the redeeming creditor applied to be relieved from the effect of a short payment made in consequence of a mistake of the law. His application was denied. But Judge Sutherland in that case says, "Had it been a mere misaddition, or a mistake of fact, the court might perhaps have interfered and relieved against it; but being a plain mistake of the law, it is a case over which they have no control. In *Ex*

Hall *v.* Fisher.

*parte Peru Iron Company,* (7 *Cowen.* 556,) the short payment was evidently in consequence of erroneous information received from the sheriff, but the decision of the question of the short payment was placed expressly on the case of *Dickinson* v. *Gilliland,* without adverting to the distinction between a case of a mistake of the law and a case of a mistake of fact.   In *Ex parte Raymond,* (1 *Denio,* 272,) the short payment was in consequence of a mistake of the law.   All the matters of fact in the case were known to the redeeming creditor.

It is undoubtedly a general rule that courts of equity can not dispense with the regulations prescribed by a statute, where they constitute the apparent policy and object of the statute; nor supply any circumstance for want of which the legislature has declared an instrument void.   But this rule is not universally true.   (1 *Story's Eq.* §§ 96, 177.)   It is by no means clear that a party who has been prevented by fraud or accident from completing an instrument with the formalities prescribed by law, has no remedy in equity.   (1 *Fonb. Eq. ch.* 1, § 7, *note t.*)   A distinction is recognized between legislative acts which merely deny legal effect to certain instruments, and those which declare them void to all intents and purposes.   It is inferred from the words of the acts coming within the latter class that the legislature intended to deny to the courts the exercise of either equitable or legal jurisdiction.   But such intention is not inferrible from the language of the acts embraced in the former class. Upon this distinction the decisions as to the construction of the English annuity and ship registry acts have been founded. (*Davis* v. *The Earl of Strathmore,* 16 *Ves.* 419.   3 *Kent's Com.* 195, 196.)   In these acts it is declared that if the bill of sale of a ship, or the memorial of an annuity, is not drawn and executed in the mode and form prescribed by the acts they shall be void to all intents and purposes.   Upon these words in those legislative acts it has been held in England that a court of equity has no power to supply the defects in the instrument. (*Hood* v. *Burton,* 2 *Ves. jun.* 29, *p.* 38, *and note, Am. ed.    Ex parte Yallop,* 15 *Ves.* 60, 65, 68.    *Davis* v. *Earl of Strathmore,* 16 *Id.* 427, 8.    10 *Id.* 209, 216.    6 *Id.* 739, 795.    11 *Id.*

621, 635, 642.)   But Lord Eldon, in *Curtis* v. *Perry*, (6 *Ves.* 745, 6,) intimated that even the ship registry acts do not prevent trusts implied or arising by operation of law.   And in *Mestaer* v. *Gillespie* both Lord Eldon and Sir William Grant strongly intimated an opinion in favor of the power of the court to give relief to the vendee of a ship, where the completion of the transfer by an endorsement on the certificate of the registry required by the registry acts was prevented by the fraud of the vendor. (11 *Ves.* 621, 625, 626, 638, 640, 643.)

The court of chancery in England has for a long period exercised its equitable jurisdiction in cases arising on the English registry act, and the ancient act as to bargains and sales.   Although these acts declared that an instrument, if not enrolled or registered, should be void, yet there being a contract between the parties that the one should be vendor and the other vendee, the conscience of the party has been uniformly held by the English court of chancery to be bound, notwithstanding the statute. (*Davis* v. *Strathmore*, 16 *Ves.* 427, 428.   11 *Id.* 625.)

So, although the statute of frauds declares that no interest in lands, or any trust relating thereto, shall be created except by writing, it is the constant practice of a court of equity to grant relief, even against the express provisions of the statute, where a party seeks to make the statute an instrument of fraud.   Thus a deed absolute on its face, if intended as a mortgage, will be deemed to be one.   And where there has been a part performance of a parol agreement to convey land, a court of equity will decree a specific performance.   (*Niven* v. *Belknap*, 2 *John.* 587. 11 *Ves.* 627, 8.)

There is nothing in the language of the redemption act which inhibits the interposition of equity to relieve the judgment debtor, or a judgment creditor attempting to redeem lands sold on execution, in a proper case, from the consequences of a mistake of fact or of the fraudulent conduct of the purchaser.   There are to be found in the act no words like those contained in the English annuity and ship registry acts, declaring that the redemption shall be void to all intents and purposes, unless there is a strict and minute compliance with every requirement of the

Hall v. Fisher.

statute.  I see nothing in the cases cited by the defendant's counsel which denies to this court, in the exercise of its equita-ble jurisdiction, the power to accord relief to the owner of real estate, coming to redeem his lands sold on execution, from the consequences of a mistake of fact on the part of the sheriff or purchaser, by means of which he has been misled, and has thereby failed to comply with some one of the requirements of the redemption act.  The cases of *Fort* v. *Beekman*, (1 *John. Ch. Rep.* 188,) and of *Buchan* v. *Sumner*, (2 *Barb. Ch. Rep.* 165,) are not authorities against the power of the court to relieve the plaintiffs in this suit.  In both those cases the rights of third persons had intervened and attached after the mistake in the registry of the mortgage in the one, case and the error in the docket of the judgment in the other, and before the application to the court for relief.  The decision in *Frost* v. *Beekman* may even be regarded as an authority to sustain the power of a court of equity, under special circumstances, to relieve in case of a non-compliance with the requirements of a statute.  The registry of the mortgage in that case did not conform to the directions of the mortgage act.  That act required the amount of the mortgage money to be truly stated in the registry of the mortgage.  This requirement was not complied with.  The mort-gage was given for $3000, and it was registered for $300, and it was held that it was notice to subsequent purchasers, to the extent of the sum expressed in the registry.  In the case of *Buchan* v. *Sumner* the chancellor refused to interfere to deprive another judgment creditor of his legal priority obtained by the error of the clerk; because where a lien is created by statute, and the lien itself, as well as the estate against which it is sought to be enforced, are both purely legal, the court is not authorized to extend the lien to cases not provided for by the statute.

If the redemption in this case shall be held to be valid the purchaser will not be prejudiced ; as the sheriff will be liable to him for the deficiency in the payment.  The short payment was the result of the mis-addition of the agent of the sheriff's deputy ; and it is a general rule that the sheriff is liable civilly for the tortious act, default, or other misconduct, whether wilful or

Hall *v.* Fisher.

inadvertent, of his under sheriff or deputy in the course of the execution of his duties.   (1 *Chit. Pl.* 82.)

Although it is not made the duty of the sheriff to compute the interest on the purchaser's bid and to ascertain the precise amount to be paid by a party who applies to redeem, yet if he voluntarily undertakes to make the computation, and in so doing commits an error, and thereby misleads the party coming to redeem, who relying upon the computation of the sheriff as in all respects accurate, omits to make the calculation for himself, and pays to the sheriff the sum stated by him to be the true amount to be paid, and the sheriff accepts the same as payment, I agree with the chancellor that there is good reason for holding the redemption valid and effectual.

The case of *Ex parte Becker*, (4 *Hill*, 613,) tends to show that this case comes within the principle of *de minimis non curat lex*.   In *Ex parte Becker*, English sovereigns, and five franc pieces, were received by the sheriff without objection, at their current value, as a payment on a redemption of lands sold on execution.   After the payment it was ascertained by the oath of a witness that their legal value was 12 cents less than their current value.   Bronson, J. held that conceding this discrepancy to exist between the current and legal value of these foreign coins, as they had been accepted by the sheriff at their current value, without objection, the payment was a good payment, and that it came within the principle of *de mimimis non curat lex*.   In that case the deficiency was 12 cents; in this it is 30 cents.

The claim of the plaintiffs to relief is founded in the plainest principles of justice.   There are few cases that come before the court, which commend themselves by such high and cogent equities as the case of the plaintiffs.   Their property which they come here to protect is proved to be worth $2500.   It was bid off at an execution sale, by the agent of Henry Fisher, for $39. The plaintiff E. Hall attempted to redeem it from the purchaser. Misled by a miscalculation of the agent of the sheriff he paid 30 cents short of the true amount required to be paid.   Of this error in the computation of the sheriff's agent the plaintiffs had

no knowledge until Oct. 1844. Henry Fisher was informed of the redemption of Hall early in Oct. 1839, more than a month before the expiration of 15 months from the sale; and he failed to give notice to Hall of his objection to the redemption, in time to enable him to procure a redemption through a friendly creditor; and omitted to make any claim to the share of the ore bed belonging to the plaintiffs, until June, 1844. And previous to that time he recognized the plaintiffs as co-tenants of the ore bed, and the owners of one-fourth thereof. Intermediate the redemption and June, 1844, the plaintiff Ephraim Hall, relying on the validity of the redemption, purchased from his father one half of the property in question; and the plaintiff Eliphalet Hall, in full faith that he was a part owner with Fisher of the ore bed, expended considerable sums of money on the ore bed, in the erection of valuable buildings and machinery. Fisher stood by and saw Eliphalet Hall expend his money upon the ore bed, without disclosing to him his intention to object to the validity of the redemption, and to claim his share of the ore bed under his purchase at the sheriff's sale. These facts and circumstances show that the claim of the plaintiffs to relief is in the highest degree just and equitable, and that the attempt of H. Fisher to deprive them of their property was both inequitable and unconscientious. And the only question for my consideration is, whether the powers of a court of equity are sufficiently ample to accord the relief to which the plaintiffs are, upon the principles of justice and moral equity, eminently entitled. I am inclined to believe that the court, in the exercise of its ordinary equitable jurisdiction, can under the circumstances of this case, relieve the plaintiffs upon other grounds than that of a mistake of fact on the part of the sheriff, connected with the redemption of the premises in question.

Henry Fisher stood by, between the time of the redemption and June, 1842, and suffered the plaintiffs to expend money on the premises in the erection of valuable buildings and machinery connected with the raising of iron ore, under the belief that they were part owners with him, without making known to them his own claim to their share of the ore bed under his pur-

Hall v. Fisher.

chase at the sheriff's sale. Having so stood by and suffered their expenditures to be made, principles of equity would not permit him afterwards to assert his title against the plaintiffs. Under the circumstances of this case the court ought to go further than merely to compel Fisher or his assignees to pay the plaintiffs a compensation for their improvements. It should hold Fisher estopped in equity, as against the plaintiffs, from exercising any legal right whatever to their one-fourth of the ore bed. (1 *Story's Eq. Jur.* §§ 388, 389, 385. *Jackson* v. *Cator*, 5 *Ves.* 687. *Dan* v. *Spurrier*, 7 *Id.* 231, 235. *King* v. *Inhabitants of Butterton*, 6 *D. & E. Rep.* 554; 16 *Wend.* 302, 303, 317. *Wendell* v. *Van Rensselaer*, 1 *John. Ch. Rep.* 353. *Storrs* v. *Barker*, 6 *Id.* 166. *Niven* v. *Belknap*, 2 *John. Rep.* 589. *Taylor* v. *Stibbert*, 2 *Ves. Jun.* 443, *note* 3, *Sumner's ed. Shine* v. *Gough*, 1 *Ball & Beat.* 444. *Medlicott* v. *O'Donnell, Id.* 171. *Hanning* v. *Ferrars, Gilb. Eq. Rep.* 85.) The defendants Miller, Clark, Tyler and Artcher, deriving their title under H. Fisher, and having purchased with full notice of the claim of the plaintiffs, are also bound by the estoppel. I am inclined also to believe that the acceptance by Fisher, from Meacham, of Cuyler's receipt, accompanied by the information given to him by Meacham, that on presenting the receipt to Cuyler he could obtain the redemption money, and his retention of the receipt, and his silence as to the invalidity of the redemption, until the expiration of the 15 months within which Eliphalet Hall and his father could have procured a redemption through a friendly creditor, his recognition of the plaintiffs as joint owners with himself, for nearly five years after his knowledge of the redemption, his maintaining silence as to his own claim to their share of the premises until after Eliphalet Hall had expended money thereon, and Ephraim Hall had purchased his father's share of the same premises, ought to be regarded in a court of equity as a ratification of the redemption, and a waiver of any irregularity or defect therein. (7 *Hill*, 91. 6 *Id.* 340. 6 *Cowen*, 465. 1 *Hill*, 238.) It is a familiar principle in equity, that if a person maintains silence when in conscience

he ought to speak, equity will debar him from speaking when conscience requires him to be silent. (2 *John. Rep.* 589.)

I am aware that there is an incompatibility between the testimony of Meacham and Cuyler, in relation to the delivery to H. Fisher of the receipt of the latter. But as Meacham swears positively to the fact of the delivery, and Cuyler only to a declaration of Meacham that H. Fisher refused to take the receipt, reliance should be placed upon the evidence of Meacham, in preference to that of Cuyler, as the evidence of the latter was merely that of a declaration, or confession; which is the most unsafe species of evidence, and in which the witness is most likely to be mistaken.

After a careful review of the facts and law of this case, I have come to the conclusion that the plaintiffs are entitled to relief. I think that the attempt of Henry Fisher to defeat the redemption, and to secure to himself the one-fourth of the ore bed, belonging to the plaintiffs, for a nominal consideration, is inequitable and unconscientious; and I am not sure but that his conduct calls for the application of a harsher epithet than those which I have applied to it. I am satisfied that the equitable powers of this court are sufficiently ample to enable me to administer justice between the parties in accordance with the plain equities of the case, and thus to avert the wrong and injustice to the plaintiffs which would be the result of a decree declaring the redemption irregular and void.

Calvin Fisher purchased the premises at the sheriff's sale as the agent or trustee of Henry Fisher, and released the premises to him on the 15th of April, 1843. At the time the original bill was filed he had no interest whatever in the premises. And in his answer to the original bill, put in on the 22d of May, 1845, he denied that he had at the time of the filing of such bill any interest in or title to, the premises. It seems, however, that soon after the filing of the original bill, by deed dated the 16th of November, 1844, the premises, in connection with the whole of the lot No. 42, and the ore bed thereon, were conveyed to him and to H. M. Storrs, in trust for Henry Fisher, his devisees and heirs at law. And it appears also that Henry Fisher

died on the 13th of May, 1847, having previously devised the premises to Calvin Fisher and his brother; and that they, on the 16th of August, 1847, conveyed the premises to the defendant Charles Miller. There is no allegation in the original bill that Calvin Fisher incumbered the premises before he conveyed them to his father, on the 15th of April, 1843. Calvin Fisher having no interest in the premises at the time of the filing of the original bill, and it not appearing that he had incumbered the premises, he was at that time not a proper party to the bill. But on his receiving the trust deed he could have been made a party by a supplemental bill. His subsequent interest in the premises under the trust deed, and under the will of his father, is fully stated in the supplemental bill filed on the 7th of October, 1847. I think that under the circumstances Calvin Fisher is entitled to costs down to and including his answer, but not to any costs subsequent thereto. The defendants Miller, Clark, Tyler and Artcher, purchased pendente lite with full notice of the claim of the plaintiffs, and expressly subject to such claim. The interest of Miller in the premises is now that of mortgagee only. He conveyed to Clark, and took from him and his grantees, Tyler and Artcher, a mortgage on lot 42, including the whole of the ore bed in question. Miller, Clark, Tyler and Artcher stand in the plight and condition of Henry Fisher; and they are bound by his acts, and are liable to all the costs of the proceedings, from the beginning of the suit. (2 Barb. Ch. Rep. 69.) As Calvin Fisher is not a party to the supplemental bill, and as upon the original bill and his answer thereto no decree for an account of rents and profits could be made against him, that account as to him, as well as the account as to Austin Fisher and the representatives of Henry Fisher, must be taken in another suit or suits.

A decree must be entered declaring the redemption of the premises in question by the plaintiff E. Hall in behalf of himself and Joseph Hall a valid redemption in equity ; and it must direct that the defendants Miller, Clark, Tyler and Artcher convey to the plaintiffs in fee, by deed of release, the said premises, containing covenants against their own acts respectively. The

decree must also direct that Calvin Fisher execute and deliver to the plaintiffs an instrument in writing, under seal, covenanting that he has done no act, nor suffered any to be done, whereby the premises in question have been incumbered or the title thereto affected or impaired, except the act of conveying the premises to Henry Fisher on the 5th of April, 1843, and the act of conveying the same to Charles Miller on the 16th of August, 1847. And the decree must declare that the plaintiffs are entitled to the rents and profits of the premises since they relinquished to the defendants or any of them, or were deprived by them or any of them, of the possession thereof. And it must direct a reference to take an account of such rents and profits. The decree must direct that the defendants Miller, Clark, Tyler and Artcher pay to the plaintiffs their costs from the beginning of the original suit; and that if Miller is compelled to pay such costs to the plaintiffs he may have a remedy over for the same, against Clark, Tyler and Artcher. The decree must reserve to the plaintiffs the right to enforce, by any other suit or suits, any claim which they may have against the representatives of Henry Fisher, or against Calvin and Austin Fisher, or either of them, for rents and profits of the premises in question received by Henry Fisher during his life, or by Calvin and Austin Fisher, or for any waste committed by them or either of them, after the plaintiffs relinquished or were deprived by them, or by any one or more of them, of the possession of the premises.

The decree must also direct that the plaintiffs pay to Calvin Fisher his costs down to and including those of putting in his answer to the original bill.