RIPLEY SONS *v.* LEEDS BILLINGS.

*Equitable Estoppel.*

Assumpsit for two yoke of oxen that the plaintiffs claimed to have sold to the defendant through their agent. The defendant claimed that he bought the oxen as the agent of his son, and that the plaintiffs' agent knew it when he bought them. One of the plaintiffs called on the defendant for pay, and the defendant said he could not pay the money, and offered his note, but said nothing that the debt was for his son to pay. The plaintiff told him it was a cash trade, and they wanted the money; and refused the note. The defendant's son subsequently became bankrupt. *Held,* that the defendant was not estopped from denying his liability for the oxen.

ASSUMPSIT for two yoke of oxen sold and delivered. Plea, the general issue, and trial by jury, September term, 1873, WHEELER, J., presiding.

The plaintiffs' evidence tended to show that their agent, William Kimball, sold the oxen to the defendant. The defendant's evidence tended to show that he bought the oxen as the agent of and for his son, Charles Billings, and that said Kimball so understood it at the time. It appeared that the contract of sale took place on the plaintiffs' premises, at Rutland Center, between said Kimball and the defendant, on the 26th of April, 1869, neither of the plaintiffs being present; and that the oxen were charged on the plaintiffs' books to the defendant. The plaintiffs' evidence tended to show that they did not know the oxen were sold to Charles Billings, or that the defendant was acting as his agent in the purchase; but supposed they were sold to the defendant. It appeared that during the month of May, 1869, Charles Billings failed in business, and was soon after adjudged a bankrupt. Charles H. Ripley, then one of the plaintiff firm, a witness introduced on the part of the plaintiffs, testified that in May, 1869, soon after the sale of the oxen, and before the failure of the said Charles, he called upon the defendant to pay for the oxen, and the defendant replied that he could not pay the money, but offered his note, and gave no notice to him that the debt belonged to Charles Billings to pay; and that the witness, in reply, said it was a cash trade, and they wanted the money; and that he did not take the note for that reason. The defendant testified on this point, in substance, that on this occasion he did not speak of payment or giving a note, himself, but of his son Charles doing so.

The plaintiffs' counsel requested the court to charge the jury, among other things, that if the defendant had the conversation with Charles Ripley, as testified to by said Ripley, he was estopped, after the failure of his son Charles Billings, from setting up that his son, and not he, was liable to the plaintiffs.

The court declined to charge as requested; but charged, in substance, that this conversation of the defendant, and his conduct on that occasion, if it was as Charles Ripley testified, would not make the defendant liable, if he was not liable before; but that it was to be considered upon the question as to whether the sale was in fact made to the defendant or to his son Charles. To

the charge as given, and to the refusal to charge as requested, the plaintiffs excepted. Verdict for the defendant.

*Dunton & Veazey*, for the plaintiffs.

The doctrine of estoppel *in pais* has always received a construction by the courts of this state, sufficiently broad and liberal to cover the point presented in this case. *Hicks et al.* v. *Cram et al.* 17 Vt. 455 ; *Strong* v. *Ellsworth*, 26 Vt. 373 ; *Halloran* v. *Whitcomb*, 43 Vt. 307 ; *Montpelier & Wells River R. R. Co.* v. *Langdon*, 45 Vt. 144. The New York courts express the same doctrine, as follows : " If a person maintain silence when, in conscience, he ought to speak, equity will debar him from speaking when conscience requires him to be silent." *Hall* v. *Fisher*, 9 Barb. 17.

The case is similar in principle to those where a party stands by and allows another to contract on the faith or understanding of a fact which he can contradict. He cannot afterwards dispute that fact. 1 Phil. Ev. 464,–5–6, and cases cited in the notes. Also to that class of cases where a man is bound by the character or relation which he puts himself before the world as holding. 1 Phil. Ev. 459, and cases cited ; *Starr* v. *Knox*, 2 Conn. 215 ; *Williams* v. *Kelley*, Ib. 218. Where a man receipts to an officer for goods attached, promising to redeliver, he is estopped from claiming the goods were his own at the time the levy was made. *Dazell* v. *Odell*, 3 Hill, 215, cited in Big. Estop. 478. It is not necessary that the one party should be induced by the other to alter his previous position, in order for the doctrine of *estoppel in pais* to apply. It is sufficient if one permits the other to act under a false impression. 1 Phil. Ev. 465, n. (1). That the estoppel may arise from passive conduct or silence, see *Gregg* v. *Wells*, 10 Ad. & E., 90 ; Big. Estop. 500 ; *Niven* v. *Belknap*, 2 Johns. 573 ; *Chapman* v. *Chapman*, 59 Penn. St. 214 ; *Gregg* v. *Von Phul*, 1 Wal. 274 ; *Ives* v. *North Canaan*, 33 Conn. 402 ; *Fletcher* v. *Holmes*, 25 Ind. 458, 470.

*C. H. Joyce* and *Prout, Simons & Walker*, for the defendant.

The conversation of the defendant with Charles Ripley does not amount to an estoppel if as claimed by the plaintiffs. It does

not appear that the plaintiffs were misled into doing or omitting to do anything, by the defendant's language. The case fails to show that the language, if used, was so used with any intention to mislead or deceive. Herman Estop. 2, 3, 341, 542 ; *Hicks et al.* v. *Cram et al.* 17 Vt. 449 ; *Shaw* v. *Bebee et al.* 35 Vt. 204 ; *Halloran* v. *Whitcomb*, 43 Vt. 307 ; *Montpelier & Wells River R. R. Co.* v. *Langdon*, 45 Vt. 144 ; *Dazell* v. *Odell*, 3 Hill, 215 ; 2 Smith Lead. Cas. 435 ; 9 Allen, 455 ; 12 Allen, 401.

The charge of the court was correct ; for if the defendant used the language claimed, it amounted only to an oral promise to pay the debt of another.

The opinion of the court was delivered by

ROYCE, J. The plaintiff requested the court to charge the jury, that if the defendant had the conversation with Charles Ripley as testified to by him, he was estopped now, after the failure of his son, Charles Billings, from setting up that Charles, and not he, was liable to the plaintiffs ; and the error complained of is, that the court declined to comply with this request. The plaintiffs were not entitled to the charge requested, unless the conversation of the defendant was so far conclusive upon him, as to entitle it to the legal effect of an equitable estoppel, or an estoppel *in pais.* The doctrine of this class of estoppels, growing out of the declarations and conduct of persons in peculiar circumstances, or rather growing out of the application of principles of justice, and honor, and sound morality, to the conduct of men, has been so often and fully discussed in this court, that it need not be enlarged upon here. In *Pickard* v. *Sears*, 6 Ad. & El. 479, Lord DENMAN says, that the rule of law is clear, that when one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. This has ever since been regarded as the rule of law upon this subject ; but in its application, courts have to regard the facts and circumstances of the case where it is sought to be applied. In this case, the plain-

70

tiffs claim that what the witness Charles Ripley testified that the defendant said, amounted to such an admission of his liability as would estop him from denying it. A man can be estopped from denying only what he has once admitted; and admitting all that the plaintiffs claim in relation to that conversation, the admission would not be conclusive upon the question of the defendant's legal liability: and giving it the effect of an estoppel, would make it conclusive. If it had appeared that at the time of this conversation, the defendant understood that the plaintiffs claimed that he was primarily liable to them for the oxen, it might have merited a different consideration. But in the absence of this fact, to hold that such an admission would be conclusive of his liability, would be extending the doctrine of estoppels arising from admissions, beyond the reasons upon which it is based. It is further claimed that the defendant, by his conduct in neglecting to give Charles Ripley notice that the debt belonged to Charles Billings to pay, has estopped himself from denying his liability.

It has been held in many cases, that a party is bound by his silence, when in fairness he ought to have spoken. And this doctrine was well enunciated in *Hill* v. *Fisher*, 9 Barb. 17, that where a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent. But this doctrine is not applicable here, for the reason heretofore stated, that it does not appear that the plaintiffs claimed that the defendant was primarily liable to them for the oxen. Hence, there was nothing that he was bound to communicate upon the subject, and his silence can be accounted for, without attributing to him any such motives as have been claimed in argument. There is another reason why the rule claimed should not have been applied here; and that is, that it does not appear that the conduct of the plaintiffs was in any way influenced by the admissions or conduct of the defendant, or that they were injured thereby. These views we believe to be in harmony with the adjudged cases in this state; and that the court gave the plaintiffs all the benefit of the conversation and conduct of the defendant, as evidence, that they were legally entitled to.

Judgment affirmed.