## MARY TILTON *vs.* WILLIAM NELSON.

Where a party acquiesces in a conveyance of his own property, by another, under color and claim of title, he shall not afterwards be permitted to dispute that title.

M. having mortgaged certain premises to the loan commissioners, and a sale thereof being about to take place, under the mortgages, at his request, an arrangement was made between M. and the W. C. Bank, the holder of a judgment against him subsequent in date to the mortgages, by which the bank was to become the purchaser of the mortgaged premises, at the mortgage sale, pay the mortgages, and hold the land until, by sales thereof, the bank should be reimbursed what it should have advanced upon the sale, and the amount of its judgment with interest, expenses, &c. The bank accordingly bid off the property, at the mortgage sale, and took possession thereof; M. attorned to the bank, and the bank proceeded to sell parcels of the property, from time to time, and to apply the avails according to the agreement; M. surrendering the possession to the purchasers of the various parcels, as the same were sold, and continuing to act upon the arrangement during his lifetime. *Held*, that the conduct of M. was in effect an assertion that the bank, by purchasing at the loan office sale, would obtain an indefeasible title to the premises; and that by such conduct he, and his descendants, were estopped from subsequently asserting the irregularity and invalidity of the proceedings of the loan commissioners to effect a sale; and from claiming title to the premises, as against the grantee of the bank.

And the wife of M. having, after the termination of the coverture, recognized the validity of some of the conveyances made by the bank; and having accepted of the surplus arising from the sales made by the bank after the death of her husband; *Held*, that she, also, was estopped from denying the validity of the foreclosure, and the sale to the bank.

Under such circumstances, the party is concluded from denying what his conduct has asserted; or from interfering in any way with titles which he is estopped to controvert.

Ignorance of the law will not prevent the application of the rule of equitable estoppel, when the circumstances would otherwise create an equitable bar to the legal title.

APPEAL from an order made at a special term, overruling a demurrer to the answer. The following opinion, given at special term, states the material parts of the pleadings, and shows the legal questions raised by the demurrer.

S. B. STRONG, J. "The plaintiff states in her complaint that Nathaniel Drake and his wife conveyed the land in dis-

pute, with other property, to Samuel Marks; that Marks entered into possession of the premises thus conveyed to him, and occupied the same; that he is now dead, and the plaintiff is one of his heirs at law; that the defendant wrongfully entered into, and still holds possession of, the land in dispute, claiming the same in fee, and the plaintiff demands judgment that she is entitled in fee to, and that she recover possession of the undivided fifteenth part of such land; that being the portion of the real estate of Marks, to which she is entitled as one of his heirs at law. There is no allegation that either Drake or his wife or Marks had any title to, or the right of possession of, the land, or that the plaintiff has such right or title now; and the complaint is defective, and I think that but for the admission in the defendant's answer, which I shall presently consider, would have been fatally defective by reason of such omissions. But the defendant, in that part of his answer setting up his third defense, to which the demurrer was interposed, claims title under Marks, and thus in effect admits that he was at one time seised in fee of the premises in dispute. Probably the admission cures the defect.

The defendant in that part of his answer which sets up his third defense, alleges that Marks and his wife executed two mortgages to secure the payment, the first of $2000 and the second of $1000, to the commissioners for loaning certain moneys of the United States for the county of Westchester, upon the premises described in the complaint; that the Westchester County Bank duly recovered a judgment against Marks, partly for moneys advanced to pay the interest on said loans, which is still unpaid, and became a lien upon the premises, subject to the previous incumbrances by the two mortgages; that Marks having made default in the payment of a part of the interest due on these mortgages, and finding it difficult to pay the same, requested the commissioners to sell the premises, and they were accordingly advertised by them for sale; that previous to the day of sale, Marks called upon Isaac Seymour, the cashier and principal officer of the bank, and

Tilton *v.* Nelson.

informed him of such intended sale, and requested him, as the representative of the bank, to attend the sale and purchase the premises, stating that otherwise there would be no bidders, and that it would be the only means of enabling the bank through subsequent sales to realize any thing upon its judgment; that at the suggestion, instance and request of Marks, Seymour, in behalf of the bank, attended the sale and bid off the mortgaged premises for the bank, for the amount due to the commissioners for principal, interest and costs, which was paid by the bank; to which corporation a deed for the premises was thereupon executed and delivered; that the object of the bank was to obtain a reimbursement of the money paid to the commissioners, and satisfaction of its own judgment by future sales of the property; and Marks assured its officers that he would do all in his power to effectuate such sales "to the end aforesaid;" that Marks and his wife had full knowledge of all the facts and circumstances preliminary to, and attending the sale and conveyance to the bank, and induced the bank to become the purchaser, and after the purchase and conveyance gave their assent and sanction thereto, and both of them in the lifetime of Marks, and the widow, since his death, recognized the proceedings as valid; that after the said sale Marks and his wife remained in possession as tenants under the bank, until the premises were sold from time to time by the bank, and upon such sales gave up the actual possession to the purchasers; that such subsequent sales were made under the advice, and with the assistance of Marks and his wife during his lifetime, and of his widow after his death; that the bank, after the death of Marks, and after consultation with his widow, and with her full knowledge and approval, and by her advice, and for a full and valuable consideration paid by the defendant, sold and conveyed to him in fee, the premises described in the complaint, (with some inconsiderable exceptions,) and he thereupon entered into, and has since continued in, the possession thereof; that the bank has realized from all its sales sufficient to pay its advances

and satisfy its judgment, and about $150 more; that it has paid this excess to the widow, and she has accepted it with a full knowledge of all the circumstances, and under a verbal understanding with Seymour that after the bank should be fully satisfied, any surplus which might arise from the sales should enure to the benefit of Marks and his wife, or one of them; and the defendant claims that the plaintiff is estopped from questioning the regularity or legality of the sale and conveyance by the commissioners to the bank.

The plaintiff demurred to this defense, and assigned various causes, which I shall consider so far as I deem them material.

It seems to be admitted in the part of the answer to which I have referred, and is no doubt true, that the sale by the commissioners to the bank was irregular, and that the subsequent conveyance would not, irrespective of the attending circumstances, confer a valid title. The defendant supposes, however, and upon that he rests his defense in that part of his answer to which the demurrer was interposed, that the plaintiff is estopped in equity from denying the validity of the sale and conveyance to him.

The transactions upon which the defense of an estoppel is founded, were mainly between Marks and Seymour, the cashier of the bank. But estoppel binds not only the principals but their privies in blood, in estate and in law.

The plaintiff is clearly a privy in blood, being a grandchild and an heir at law of one of the participators. Seymour was recognized by Marks as the lawful agent of the bank, and the representations to him while dealing with him in that capacity must be considered as made to his principal; the defendant, having purchased from the bank, is a privy in estate with that institution.

It is not averred that Marks knew of any irregularities in the proceedings of the commissioners, at the time of his negotiations with Seymour. It is merely alleged that he had full knowledge of all the facts and circumstances preliminary to, and attending, the sale and conveyance to and purchase by

Tilton *v.* Nelson.

the bank; and it may be inferred from the presumption that every man is supposed to be acquainted with the law, that he knew that the proceedings were defective. But there is nothing to show that he had actual knowledge of the legal defect, and probably he had not, as his conduct, so far as it is represented, seems to have been perfectly fair. But actual fraud is not necessary in order to create an estoppel. The principle is designed for the benefit of the one who is misled to his prejudice; and the injury to him is the same whether his informant deluded him through ignorance, mistake or willful misrepresentation. He who makes a representation to another, especially for the purpose of influencing his conduct, assumes that it is correct; and it is no defense to him, at least as to legal responsibility, that he acted without knowledge. If he has doubts, or proceeds upon supposition only, he should so state, or afterwards hold his peace. Whatever was said or indicated by Marks in this case was of transactions in reference to his own property. The party who was dealing with him might rationally conclude that his representer was well informed as to proceedings affecting his interests, and there was no imprudence in relying upon his statements or what might be reasonably inferred from them.

There was not any direct assertion that so far as related to the proceedings of the commissioners, all was right. But the rule is very clear and proper that one is concluded not only by what he does or says, but by the natural and reasonable inference from his declarations or conduct. Were it otherwise, a party might mislead another to his great prejudice by artful simulation. The inferences should of course be natural, and not far fetched. Where advice is given as to future conduct, the counselled has a right to suppose that his adviser has not only the requisite knowledge of the facts which would render the proposed measure expedient, but that he is not aware of any circumstance that would operate prejudicially. In this case the request that the bank should purchase at the commissioners' sale clearly indicated that their proceedings

had been regular, and that the resulting title would be valid. It may be, as the counsel for the plaintiff contended on the argument, that this involved a legal inference. And I am inclined to think with him, that the expression of an opinion upon a matter of law does not conclude the party making it, although it may influence action towards himself, or relative to his affairs, by another. Where the facts are known, every one must abide by his own inferences. But where the facts are not known, the assertion of a general conclusion, although it may involve legal questions, includes all the facts necessary to sustain it; certainly all which may reasonably be supposed to be within the personal knowledge of the informant. Here the advice would have been wrong had not the proceedings of the commissioners been in fact such as the statute required. I think I am safe in concluding that the advice given by Marks, in this case, under all the circumstances, clearly indicated a knowledge of the proceedings of the commissioners in reference to the proposed sale of the property, and was in effect an assertion that they had taken all the requisite preliminary steps to render such sale effectual; that it influenced the bank, through its agent, to make the purchase; and that it would be prejudicial to the bank, or its privies, to allow the title, which was acquired mainly through such advice, to be controverted. It is precisely under such circumstances that the doctrine of estoppel *in pais* does and should apply. Judge Bronson says, in *Dezell* v. *Odell*, (3 *Hill*, 221,) "Before the party is concluded it must appear (1.) That he has made an admission which is clearly inconsistent with the evidence he proposes to give, or the title or claim which he proposes to set up; (2.) That the other party has acted upon the admission; and (3.) That he (such other party,) will be injured by allowing the truth of the admission to be disproved." He quotes, with approbation, what was said by Judge Nelson, in *The Welland Canal Company* v. *Hathaway*, (8 *Wend.* 483,) that as a general rule a party will be concluded from denying his own acts or admissions

Tilton *v.* Nelson.

which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter." It has been held in many cases that a party is bound by his silence where in fairness he ought to have spoken. As in the familiar instance where one erects an expensive building on the land of another, near their division line, and the owner seeing it makes no objection; or where one sees a counterfeit note, signed with his name, sold to another without disclosing the forgery; or where the actual owner of goods stands by and allows another to treat them as his own, by which means a third person is induced to purchase them bona fide, the former cannot recover them from the purchaser. (*Gregg* v. *Wells*, 10 *Ad. & El.* 90.) In the case last cited, Lord Denman, Ch. J., said: "a party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving."

Questions relative to estoppel are not in general controlled by technical rules, but are usually determined upon principles of equity and good conscience. In this case there can be no hardship in holding that Marks was concluded by his acts from disputing the title acquired by the bank. If there was any irregularity it had no injurious effect upon the sale. That appears to have been fairly conducted. The bank obtained in fact no more than a return of what it advanced, and a satisfaction of a fair debt, the small residue having been paid to Mrs. Marks through an equitable understanding; and there is nothing to evince that the full value of the land has not been realized and the avails fairly applied. Equity will be promoted by holding that Marks and his heirs are concluded by proceedings adopted through his advice, and which have effectuated the payment of his debts.

As to the suit of Mary Marks for her dower, there is one circumstance varying it from the others: she does not claim under her late husband, but independently, as an incident to

the marriage relation. She is not therefore concluded by his acts, nor by her own during his life. But she has affirmed what she did during coverture; first by recognizing the validity of some of the conveyances, and secondly by accepting of the surplus arising from the sales made by the bank since the death of her husband.

Although a married woman is not bound by her acts during coverture, (except in the execution and acknowledgment of a conveyance with her husband, or in reference to her separate estate,) yet she can affirm them after the death of her husband.

There must be judgment for the defendant upon the demurrer to the third defense, with liberty to the plaintiff to withdraw the demurrer, and if necessary to reply, on the payment of costs, within twenty days.

Of course the affirmative relief demanded by the defendant cannot be granted should the plaintiff withdraw the demurrer; and even if that should not be formally withdrawn, I doubt whether the proposed relief would be properly granted, as the judgment could have no effect upon the claims of the other heirs of Samuel Marks.

In the suits instituted against the same defendant by Mary Marks, by Richard H. Arnold and wife, and Adeline Latham, where there were similar pleadings and to which the same principles are applicable, there must be the same judgment."

From this judgment the plaintiff appealed.

*John Townsend,* for the appellant.

*Thomas Nelson,* for the respondent.

*By the Court,* EMOTT, J. Before the code, the defense which is here interposed by answer could probably have been made available only by a bill in equity and an injunction to restrain the prosecution of the plaintiff's suit. The case of *Storrs* v. *Barker,* (6 *John. Ch.* 166,) is an instance of such a remedy applied to a state of facts very closely analogous, as it strikes me, to that before us. That was a case where the heir of a

Tilton *v.* Nelson.

feme covert brought an action of ejectment to recover a piece of land of which she had died seised. On the other hand, however, it appeared that she had during coverture devised by will the lands to her then husband. Her father, who inherited the land, she having died without issue, knew of this will and of the husband's claim and possession under it at the time of the death of his daughter, and lived very near the land all the time while the husband occupied and until he sold it to the plaintiff in the bill in chancery. During the negotiations which resulted in this sale the father, who was the defendant in the chancery suit, repeatedly advised the plaintiff to buy it. He was asked if he did not claim the land by inheritance from his daughter, and replied in the negative, for that she had made a will. After the sale he allowed the plaintiff to occupy the land for three years before advancing any claim, but finally brought ejectment, which the purchaser filed a bill in chancery to restrain, and the chancellor sustained the bill. It seems to me that if the reasoning of Chancellor Kent in that case is sound and sustained by the authorities which he examines, it disposes of the principal difficulty urged by the plaintiff's counsel against the application of the doctrine of equitable estoppel to the enforcement of the legal title to these lands.

In the case before us the answer states that the Westchester County Bank, the grantors of the defendant, acquired a title to the premises in dispute from a loan commissioners' sale made with the assent and at the request of the ancestor of the plaintiff, who had mortgaged to the loan office. An arrangement was made between him and the bank, by which the latter was to buy the property, pay the mortgages and hold the land until by sales they should be reimbursed what they advanced upon the sale and the amount of a judgment recovered by them against the mortgagor, with interest and their expenses, &c. This arrangement was acted upon during the life of the mortgagor. The bank bought, took possession, the mortgagor attorned to them, and they proceeded to sell from

time to time and apply the avails according to the agreement, the mortgagor surrendering the possession to the purchasers of the various parcels, as they were sold.

The defendant insists that this conduct estops the ancestor of the plaintiff and his descendants from asserting the irregularity and invalidity of the proceedings of the commissioners to effect a sale. In what particular these proceedings were irregular does not distinctly appear in the answer; nor indeed does it appear except by way of inference, that the sale was invalid. It might be material, in some aspects of the case, to know precisely how and when the irregularity occurred which the plaintiff relies upon to defeat the defendant's title, but which the defendant contends that Marks the mortgagor must be presumed to have known, and has estopped himself and his heirs or assigns from asserting. But it is probably sufficient to dispose of the case to assume, as both parties seem to have done, that by some irregularity or failure of the loan commissioners the title which they could and did give to the bank at the sale under Marks' mortgage was rendered defective. The answer was that Marks knew all the facts and circumstances attending the sale, but not that he knew or believed that the title was imperfect. If however he knew all the facts, then his ignorance, if he was ignorant of his rights to any extent, was of the rules or principles of law which would control the case. For instance, he may have been aware as a matter of fact that some of the proceedings, or the sale itself, had been had by one commissioner only, but he may have been ignorant that this would affect the validity of the title. And thus the question is presented, whether ignorance of the law will prevent the application of the rule of equitable estoppel. For I think this is a fairer statement of the question than to put it, as was done by the plaintiff's counsel before us, whether the acts and assertions of Marks were not the mere assertion of a conclusion of law. The conduct of Marks cannot be considered as merely the statement of an opinion upon the known facts of the case. It was a course of conduct by which the

Westchester County Bank was directly requested and induced to take the deed under which the defendant claims. Marks is not alleged to have expressed any opinion upon the validity of the acts of the commissioners. But knowing precisely what those acts were, he encouraged and induced the bank to buy his lands in the proceeding of which they were a part. He may or may not have been ignorant of the rules of law applicable to the case. It would be difficult if not impossible, especially at this length of time, to show whether he really understood his rights correctly in this respect or not. But whether he did or not, I think when he or those privy to him in blood or estate seek to controvert the title thus made, and to avoid the estoppel alleged against them, they encounter two principles of law which were distinctly applied by Chancellor Kent in the case which I have cited—a case in some respects stronger for the legal title than the one before us—and where the chancellor expresses the opinion that the defendant had really been ignorant of his legal rights. The first of these principles is, that when a party procures or even acquiesces in the disposition of his property by another under color of title, and pretending to title, he shall be bound by such disposition, and shall be presumed to know the law, so far as it is applicable to the case. The other is that even if he shows that he was really ignorant of the law, and acted in that ignorance, still the maxim *ignorantia legis neminem excusat* will apply in favor of the other party. "Equity and policy equally dictate," says Chancellor Kent, "that he and not the purchaser ought to suffer. His ignorance of the law ought not to protect him from the operation of the rule of equity. If he may be allowed to plead his voluntary ignorance, in destruction of equitable rights growing out of his own acts and assertions, the grossest impositions, and the greatest frauds, might be practiced with impunity." In that case, as I have observed already, the evidence went to show, as far as the fact was susceptible of proof, that the defendant mistook the law of the land, and did not know or learn that the devise of a feme covert was void, or that

his title to the land in question as heir at law to his daughter was paramount, until about the time of the commencement of his ejectment suit. In the present case the most that can be said for the plaintiff's claim is that Marks was ignorant that the proceedings of the commissioners were defective in point of law, and that the bank would not obtain a perfect title by what they had done. This presents a case to which the doctrine applies which was laid down in *Storrs* v. *Barker*, and in a series of equity decisions cited by the chancellor in that case, that ignorance of one's legal right does not take the case out of the rule, when the circumstances would otherwise create an equitable bar to the legal title.

But it is supposed that the authority of this and similar cases has been shaken by two recent cases in the Court of Appeals, or that the latter cases are more correctly applicable to the question before us. The first of these cases is *Brewster* v. *Striker*, (2 *Comst.* 19.) In that case the question was whether by the will of one John Hopper his executors took a present legal estate in his lands devised, or whether the fee simple became vested in his grandchildren who were mentioned in the will, so that a sheriff's deed, after a sale under an execution against one of them, would cut off his rights and vest his title in the purchaser. This was a question purely of the construction of the clauses in the will, and the court were of the opinion that no present estate passed to the grandchildren or was vested in the defendant in the execution at the time of the sheriff's sale. But the party relying on the sheriff's deed offered to show that after the death of the testator the defendant in the execution had gone into possession and had been a party to proceedings in partition, instituted by another heir, in which the petition alleged and his answer admitted seizin in fee in him and the other grandchildren, and thereupon a partition and mutual releases. This the plaintiffs in the suit then before the court insisted should estop him and his successors from denying that such was the true state of the title. The court held that no estoppel arose, and I conceive

that the decision in no way impugns the authority of *Storrs* v. *Barker*, or the class of cases to which it belongs, none of which were adverted to by the court; nor is the judgment of the learned justice at special term, in the case before us, in conflict with this authority. It will be observed that in *Brewster* v. *Striker* there was nothing but a simple admission by the party under whom the plaintiff claimed title, of a conclusion of law in his own favor and in a proceeding to which neither the plaintiffs nor any one representing them, except this individual himself, were parties. It was not made or intended to influence the conduct of any other parties, nor did it have that effect. It was in effect a mere admission of the correctness of the construction of the testator's will by certain parties claiming an interest in it, in a proceeding in which that will was set forth and referred to as the source of title. There was no conduct by the defendant leading to acts of other parties by which they would be prejudiced if he were permitted to deny the title which he had admitted in ignorance, or through mistake, of his legal rights. It was in the strictest sense an admission of law, and nothing more.

In the *Chautauque County Bank* v. *White*, (2 *Seld.* 236,) there was at the utmost no more to sustain an estoppel than in the case I have just considered. The question there was whether a conveyance by a debtor to a receiver, under an order of the court of chancery, in a creditor's suit, divested the title of the debtor so as to prevent the lien of a subsequent judgment. The defendant was alleged to be estopped from claiming that it did, because in a letter to the receiver he had expressed the opinion that such judgments were liens on the premises. This was, at the utmost, simply stating his opinion of the law, but as Judge Gardiner remarks, "This opinion was not declared to the complainants, who do not claim that they did, or omitted, any thing upon the faith of it; or indeed that they knew it was entertained by any one, until subsequent to the disposition of the property in question." Under such circumstances it was idle to pretend that any statement, much less a mis-

taken view of the law, could be an estoppel. That case is evidently in no degree analogous to the cases by which the doctrine of equitable estoppels is established.

I find no difficulty, therefore, in applying to this case the rule that where a party acquiesces in a conveyance of his own property by another under color and claim of title, with knowledge of the facts, he shall not afterwards be permitted to dispute that title. It is not necessary to go to the length of the dictum of Mr. J. Laurence, reported in 6 *T. R.* 556, who stated a case in which Lord Mansfield would not suffer a man to recover in ejectment who had stood by and seen another build on his land. That opinion has been indeed very generally questioned. It is questioned in the case of *Miller* v. *Platt,* in the superior court, to which we were referred, but that case is not in conflict with the views we have now expressed. The defense in that case was that the plaintiffs had lost their title by standing by and permitting the defendants to build upon the land in dispute without giving notice of their claim. This was set up as a flat bar to an action of ejectment, to have the effect of a conveyance, or a twenty years' adverse possession. The court, without passing upon the existence or extent of any equitable right to compensation or the like by such acquiesence in erections, perhaps expensive and made in good faith, held that such silence alone, in the face of a trespass, could not divest or transfer the title, or bar an ejectment. We have no disposition to controvert that doctrine, but it is evidently not applicable to cases where equitable relief is invoked on the ground that there has been not merely silence while another infringed upon the party's rights or trespassed upon his property, but acts and declarations inducing and sanctioning conveyances and titles which have been made and accepted in reliance upon them.

The plaintiff's counsel contends that equity does not require that he should absolutely desist from asserting title to these lands, but only that the defendant should be regarded as the assignee of the loan office mortgage *pro tanto,* or that

the plaintiffs should be required to redeem the land from that and the other liens of the original purchaser, the bank, and its assigns.    It would be a sufficient answer to this, at present, to say that this suit is an action to recover these lands upon a legal title, and that neither the proper statements are made, nor the proper parties brought in, for a suit to redeem.    It was suggested that this difficulty might be remedied by amendment, but I do not see that we could allow this, upon the determination of the present demurrer.    If the question of amendment were before us, however, I am free to say that the case does not seem to me to be one proper for such amendments. In any aspect of the matter, I think the suggestions made by the counsel for the plaintiff do not meet the equity of the case. The Westchester County Bank, the original party to this transaction, was not induced by the conduct of the plaintiff's ancestor to become a mortgagee but a purchaser, and the source of title, it may be, with warranty to subsequent purchasers.    Equity requires that Marks, if he were alive, and his heirs, should carry out the agreement which he made. No redemption would place the parties in the position which they would have occupied had his statements been true, and the effect of an estoppel is to prevent his denying their truth. His conduct was in effect an assertion that the bank by purchasing at the loan office sale, would obtain an indefeasible title.    The bank took this title to all the lands embraced in Marks' mortgage, fifteen years ago.    Marks himself survived the transaction and occupied under the purchaser six years, and his heirs have acquiesced in the ownership of the bank and its dealings with the lands ever since, until the commencement of this suit.    These facts appear by the pleadings, as also that the bank has sold the property at different times, in parcels, to various purchasers, of whom the present defendant is one.    All these dealings with the property have been with the knowledge and assent of Marks and his heirs, and upon the faith of the validity of the title, and it would not be doing justice to these various purchasers to convert them into mere

assignees or mortgagees in possession. The authorities hold that in such a case the party is concluded from denying what his conduct has asserted, or from interfering in any way with titles which he is estopped to controvert. (1 *John. Ch. Rep.* 353. 3 *id.* 271. 4 *Paige,* 94. 3 *id.* 545. 9 *Barb.* 17.)

With respect to the case of Mary Marks, I concur in the reasoning by which the learned judge, at special term, showed that she had both ratified, after her coverture had expired, the acts of her husband which operated to estop him from denying the validity of the foreclosure and sale to the bank, and had also created an estoppel against herself by her own acts previous to the conveyance of these lands by the bank, after her husband's death. Assuming, therefore, that the facts which distinguish her case from that of the heirs of her husband appear in the pleadings, the same principles are applicable to both.

The orders appealed from are affirmed with costs in both cases.

[KINGS GENERAL TERM, December 7, 1857. *S. B. Strong, Emott* and *Birdseye,* Justices.]