## MATTOON v. YOUNG.

*Estoppel — declarations of owner of real estate as to title — effect of.*

Upon a sheriff's sale of the interest of B in certain real estate which had been conveyed to him by A, it appeared that C, the purchaser of B's interest, asked A, who was present, what interest he had in the premises, and A replied that he had given B a deed, but retained a life interest, that B had not complied with the conditions of his agreement, and that C would get a good title if he had a sheriff's deed. C then made the purchase. The certificate of sale was assigned to S., who received the sheriff's deed. S. negotiated with W. for a sale of the premises, but W. refused to purchase until he could see A, who stated that if W. bought of S. the title would be good, that he had no right or interest except the rent, and that he had no interest after his death. At the same time the deed from A to B was read in W.'s presence. The instrument was very obscure and doubtful, but its legal effect was that B only took an estate during the life of A; but W. not understanding this, and relying on A's declarations, made the purchase. *Held*, that a subsequent grantee of A, and the heirs of A, were estopped from asserting title to the premises.

The representation of the construction and effect of an instrument of obscure and doubtful character is equally good as an estoppel if believed and acted upon as is a disclaimer of title to the person about to purchase.

APPEAL by plaintiffs from a judgment entered on the report of a referee in favor of defendant, except as against plaintiff, Prudence Mattoon. The action was brought in St. Lawrence county by Harvey Mattoon against John N. Young to recover possession of thirty-five acres of land. Harvey claimed by deed from his father, John Mattoon. Subsequently the other heirs of John Mattoon, and his widow, Prudence Mattoon, were made parties plaintiff. It appears from the report of the referee to whom the cause was referred, that on January 21, 1845, John Mattoon and his wife, Prudence, executed a conveyance of the premises in question, with other lands, to James Mattoon, their son. Under this conveyance James took possession. On October 31, 1849, the

interest of James in the premises was to be sold under execution. At the sheriff's sale Henry P. Cooke, who owned the execution, asked John Mattoon what interest he had in the premises. John replied that he had given James a deed, but he (John) had a life interest, that James had not complied with the conditions of his agreement, and that Cooke would get a good title if he had a sheriff's deed. Cooke then told the sheriff tŏ sell and he bid in the premises and received the certificate of sale. The referee found that Cooke was not influenced by the reply of John Mattoon. On February 27, 1850, James Mattoon conveyed the interest which he acquired by the deed from his father, to Isaac Wheeler, who, on February 17, 1851, conveyed the same interest, by quit-claim deed, to Isaac C. Sherwin. On December 26, 1851, Cooke assigned the certificate of sale to Sherwin, who received the sheriff's deed January 9, 1852. In November, 1852, Sherwin and William Willard were negotiating for the sale of the premises; but Willard refused to purchase until he could inquire of John Mattoon concerning his interest in the premises. Accordingly, Willard and his wife and Sherwin went to see John Mattoon, who, in reply to inquiries, told Willard and wife that if they purchased of Sherwin the title would be good. He spoke about the agreement between him and James, and said he had no right or interest except his rents; that it would be all right if the conditions of the agreement were complied with; that he had no interest after he died if every thing was kept up according to the writing, except that his wife had the use of fifteen acres after one year from his death. During the interview John Mattoon produced the original agreement between him and James; Sherwin produced a copy, and the two were read together and compared. Willard then purchased the premises, relying, as the referee found, upon the declarations of John Mattoon. The legal effect of the deed from John to James Mattoon was, however, that James took an estate only during the life of John, and one year after the death of John.

On January 24, 1855, John Mattoon executed to the plaintiff, Harvey Mattoon, a deed of the same premises. John Mattoon died in 1859. On June 7, 1859, Willard and wife executed a deed of the premises to John Maybee, who afterward, on October 26, 1859, conveyed the premises to John N. Young, the defendant.

The referee decided that, by the declarations made by John Mattoon to Willard and wife, all the plaintiffs, except Prudence Mattoon,

were estopped from asserting title. That Prudence, as the widow of John Mattoon, was entitled to possession of one undivided third part of said lands during her life, and to judgment against the defendant for the recovery thereof and damages for withholding the same, and defendant was entitled to judgment against the other plaintiffs. The plaintiffs, excepting Prudence Mattoon, appealed.

The case has, upon an appeal from a judgment on a former trial, been before the court of appeals, and is reported in 45 N. Y. 696. Most of the questions involved were settled on that appeal.

*L. Hasbrouck, Jr.,* for appellants, cited *Brown* v. *Bowen,* 30 N. Y. 519 ; *Maloney* v. *Horan,* 49 id. 111 ; *Jewett* v. *Miller,* 10 id. 402, 406 ; *Calkins* v. *B. & R. N. Gas Light Co.,* 1 N. Y. Sup. 541, 546; Herman on Estoppel, §§ 331, 422.

*Sawyer & Russell,* for respondent. Plaintiffs were estopped by the declarations of John Mattoon. *Wood* v. *Seely,* 32 N. Y. 116 ; *Frost* v. *Saratoga Mut. Ins. Co.,* 5 Den. 154 ; *L'Amoreaux* v. *Vischer,* 2 N. Y. 278 ; *Wendell* v. *Van Rensselaer,* 1 Johns. Ch. 344 ; *Town* v. *Needham,* 3 Paige, 545 ; *Thompson* v. *Blanchard,* 4 N. Y. 303 ; *Nixon* v. *Carco,* 28 Miss. 414 ; *Watkins* v. *Peck,* 13 N. H. 360 ; *Casey* v. *Inloes,* 1 Gill. 430 ; *Den* v. *Baldwin,* 1 Zabr. 403 ; *Corbett* v. *Norcross,* 35 N. H. 99 ; *Shell* v. *Tellford,* 4 N. Y. Leg. Obs. 307 ; *Wood* v. *Chapin,* 13 id. 509. And the estoppel is not weakened, although John Mattoon made the representations under a mistake as to the legal effect of the deed. *Storrs* v. *Barker,* 6 Johns. Ch. 166 ; *Tilton* v. *Nelson,* 27 Barb. 595 ; *Garnar* v. *Bird,* 57 id. 277 ; *Newton* v. *Belcher,* 12 Q. B. 921 ; *Newton* v. *Liddiard,* id. 925. When it is unconscientious for a party to avail himself of a mistake of law, an exception lies to the rule *ignorantia juris non excusat.* Broom's Leg. Max. 252; *Cockerell* v. *Cholmeley,* 1 Russ. & My. 418, 424, 425; *Marq. of Breadalbane* v. *Marq. of Chandos,* 2 My. & Cr. 711; Story's Eq. Juris., § 165. See, also, *Sheridan* v. *House,* 4 Keyes, 569; *Lobdell* v. *Lobdell,* 36 N. Y. 327, 333 ; S. C., 33 How. 347.

BOCKES, J. When this case was in the court of appeals (45 N. Y. 696) the question of estoppel was considered, based on the offer of proof as to what occurred between plaintiff's intestate, John Mattoon and Henry P. Cooke, at the time of the purchase of the premises by the latter at sheriff's sale, under judgment and

execution against James Mattoon. The offer of proof was this: that John Mattoon was present at the sheriff's sale, and stated publicly to bidders, and in the hearing of Cooke, the purchaser, that he (John) had no interest in the premises, that the entire title was in James, and whoever purchased at the sale would get good title.

The court held that this was competent evidence on the question of estoppel, and further, that if credited, and not rebutted or explained, "*would require*" a finding that it was made with a view to influence the action of bidders, hence would operate as an estoppel in favor of the purchaser and his grantees. GROVER, J., said that he thought it "a legitimate inference from this testimony offered," that Cooke was induced to purchase by a reliance upon this statement.

On the second trial the evidence so decided by the court of appeals to be competent, was given and stood in the case unrebutted and unexplained for aught that appears, entirely credible. The deputy sheriff, who made the sale, testified that John Mattoon was present at the sale, as was also Cooke, the judgment creditor; that just before the sale he (John) said "his son James had a deed of the place; he had given him a deed, and if it was sold on execution the title would be good. * * * * He said it to Cooke and myself and others present. Cooke immediately told me to sell the premises; I did sell, and Cooke bid them in. Before John Mattoon stated as I have testified, Cooke asked him if James had any title, and he replied as I have stated * * * He had before the sale stated to us that he had a life interest in the premises, and the sale was made with the understanding that it was subject to that life interest." No question exists in the case as to this life interest, as John died in 1859. This evidence was accepted by the referee as credible, for he finds and certifies in favor of its truthfulness.

But notwithstanding the decision of the court of appeals to the effect that this evidence, standing unrebutted and unexplained, "*would require*" a finding that it was made with a view to influence the action of bidders, yet the referee has found, without any qualifying proof, that Cooke was not induced or influenced to bid thereby. So he holds as regards this branch of the case, that there was no estoppel. His finding in this regard seems very palpably erroneous. The evidence was clear, uncontradicted and abundant to establish an estoppel against John Mattoon (except as to his

life interest), and all persons claiming title under him; for the estoppel would be equally effectual against his heirs and subsequent grantees. *Munroe* v. *Parkhurst*, 9 Wend. 209; *Mattoon* v. *Young*, 45 N. Y. 702; *Wood* v. *Seely*, 32 id. 116. But this point cannot avail the defendant here, as he has taken no exception to the findings of the referee. The defendant has not appealed; and as regards this branch of the case, he must be deemed to have acquiesced in the decision as rendered.

The case will now be considered on the question of estoppel, based on what occurred on a subsequent occasion, when one Willard made a purchase, and took a conveyance of the premises.

It appears that Cooke assigned his sheriff's certificate of sale to Isaac C. Sherwin, and the sheriff's deed was executed to him. Sherwin took possession thereunder, claiming as absolute owner. Subsequently and in 1852, a sale was in contemplation by Sherwin to Willard. The latter refused to purchase until he could learn from John Mattoon what interest he had, if any, in the premises. Thereupon Willard and his wife, with Sherwin, had an interview with Mattoon, who, in answer to questions put to him concerning the propety, stated, that if they, Willard and wife, bought the place of Sherwin the title would be good. He spoke about the agreement between himself and his son James, and said he had no rights or interest except his rents; that it would be all right if the conditions of the agreement were complied with; that he had no interest after he died if every thing was kept up according to the writing. It also appears that the original agreement was then produced and was read over. Within a few days after this interview Willard completed the purchase and took a conveyance from Sherwin. The referee found that Willard relied upon such declarations of John Mattoon, and was induced thereby to purchase the premises and paid Sherwin the full value thereof, and as matter of law he held that such statements and assurances so made to Willard created an estoppel in favor of the defendant, who succeeded to Willard's title against the title set up by the heirs at law of John Mattoon.

Laying out of view the fact that the agreement between John Mattoon and his son James was produced and read over at the time, and there can be no question, I think, but that the conclusions of the referee were eminently right. Willard was negotiating with Sherwin for the purchase of the premises. Understanding

that Mattoon might have some claim thereto he refused to close the purchase until he could learn how the fact was from Mattoon himself; thereupon he sought out the latter and interrogated him on the subject. The latter, well knowing of his intended purchase, and, of course, understanding his object in making inquiry, assured him that if he should make the purchase from Sherwin he would obtain good title; that he (Mattoon) had no right or interest in the property except his rents — in substance, that all his rights therein would terminate on his decease. Thereupon, and relying upon those assurances he closed the purchase and paid the grantor the full value of the premises. In this view the case presents every element necessary to an estoppel *in pais;* and the well-settled rule of law, based on considerations of high morality and manifest justice, may be invoked to protect the title of the purchaser against all claims on the part of the person giving the assurances, except such as he then set up and asserted. *Plumb* v. *Cattaraugus Co. Mut. Ins. Co.,* 18 N. Y. 392, 394; *Brown* v. *Bowen,* 30 id. 519; *Favill* v. *Roberts,* 50 id. 222; *Maloney* v. *Horan,* 53 Barb. 29, 40; *Wood* v. *Seely,* 32 N. Y. 105, 112; *Muller* v. *Pondir,* 55 id. 335. The cases cited are but few of the many in the books which, in my judgment, fully sustain the findings and conclusions of the referee on the question of estoppel.

But it is insisted that the doctrine of estoppel *in pais* fails in this case, for the reason that the paper which established the rights of John Mattoon, as between him and James, was present at the interview above alluded to, and was read over in Willard's presence; hence, that the latter must have known the precise extent of John Mattoon's rights, and could not, therefore, have relied on the oral statements, except as they were qualified or explained by the instrument itself.

The evidence shows that Mattoon, in the conversation, mentioned over the provisions as to the cow, horse, house, etc., and alluded to the payments to be made in butter and sugar, in the nature of rent; and in this connection, referred to the paper which was then read over. Now, if it must be assumed that Willard understood perfectly all the terms and conditions of the instrument — comprehended its entire legal effect — then, of course, the doctrine of estoppel *in pais* could have no application; for a party cannot be misled to his prejudice when he knows the truth as fully as the party sought to be estopped. *Calkins* v. *Bl. & Roch. Nat.*

*Gas L. Co.*, 1 N. Y. Sup. 546. In such case, he would have purchased with full knowledge and understanding of all the facts; hence could not have been misled. But is it clearly proved that Willard understood, fully comprehended, the terms and legal effect of the instrument? True, it was read over in his presence, but, as would seem from the evidence, rather with a view to the provisions particularly alluded to by Mattoon, all which would terminate with his life, than to determine the estate thereby conveyed; which estate he asserted to be absolute in James on his decease; that James had the fee, subject only to certain rights held by John, the father, during life, was distinctly asserted by the latter, and seems to have been accepted as a fact by all; and the instrument was probably referred to in order to obtain a full understanding as to those rights belonging to John. The paper was not one to be readily comprehended. It was not in the usual simple form of a conveyance, but was intricate in language as well as complicated with various provisions. To understand it careful study was needful. It was evidently drawn by a person unaccustomed to the preparation of legal instruments. Its provisions and the qualifications of the grant are thrown in without order or definiteness. It lacks perspicuity to a degree that requires analysis and arrangement in order to comprehend it; and even then what the parties in fact intended will remain somewhat in obscurity. Therefore it might well be that one educated in construing such instruments might have heard it read without comprehending its legal significance. Should, then, every one whose attention had been briefly called to its provisions be held to a full understanding of it according to its exact legal import, and that, too, when declared to have a different meaning and effect in some particulars by one interested to give it a correct construction? More especially should the party be held to such knowledge in view of the additional fact that its examination was probably induced in order to obtain an understanding of certain provisions, other than the clause, as to which the mistaken construction was asserted? On the other hand, it seems to me that, under the circumstances attending this case, it would be far more reasonable to hold that there was a want of knowledge on the part of the purchaser of the import and legal effect of the paper; and to require that John Mattoon be held to his deliberate and unqualified assertion that the former would obtain good title in case he should consummate the purchase.

It seems impossible that Willard understood that he would obtain by his purchase from Sherwin only such interest as the instrument, according to its exact legal construction, granted to James, to wit, but a qualified right of occupancy for a very few years at most. The payment by him of the full value of the property shows quite conclusively, I think, that he did not understand the paper; but relied on the assertions of John Mattoon, as to the estate he proposed to obtain. And he had a right to rely on those assurances. As was said in *Favill* v. *Roberts*, 50 N. Y. 222–225, he had a right to presume that the party knew the situation of his own title.

It is quite apparent, I think, that Willard remained ignorant of the legal effect of the instrument; that he did not know or understand that the grant of the premises in controversy to James gave him but a qualified interest therein during the life of John, and for one year thereafter. Admit that John did not intend to deceive Willard, and it is quite manifest that all the parties were under misapprehension as to the legal import of the instrument. Sherwin, who was present at the interview between John and Willard, swears that he had never heard of any claim by John on his heirs. John asserted that he had none, except such as would terminate on his decease; and further assured Willard that if he should make the purchase, he would obtain good title; and Willard then made the purchase, and paid the full value of the property. But, if all were under mistake, that fact would not relieve the case from the effect of the estoppel here urged. *Favill* v. *Roberts*, 50 N. Y. 226; *Tilton* v. *Nelson*, 27 Barb. 595.

Now, if Willard, in point of fact, remained ignorant of the legal effect of the instrument, then the case is the same on this question of estoppel as if the paper had not been read over in his presence. The referee has so found in effect; for he has found as a fact that Willard relied upon the declarations of John, and was induced thereby to purchase, and did purchase the premises, and paid the full value thereof. I think this finding right. I am of the opinion that it is well supported by the evidence. If so, then the estoppel was established, and it may be insisted on against the heirs at law of John. *Mattoon* v. *Young*, 45 N. Y. 702; *Wood* v. *Seeley*, 32 id. 116.

It follows, if the above conclusions be sound, that the judgment directed by the referee was right, and should be affirmed.

BOARDMAN, J.   I concur, believing that the representation of the construction and effect of a written instrument of an obscure or doubtful character is equally good as an estoppel, if believed, relied upon and acted upon, as is a disclaimer of title to the person about to purchase.

MILLER, P. J., dissenting.   In the case now considered, the court of appeals, on a former appeal, held that it was error to exclude evidence of declarations by an owner of real estate, made publicly to the bidders at a sheriff's sale thereof, and in the hearing of one who afterward purchases at such sale, that he had no interest in the premises, and that the entire title was in the execution debtor, and whoever purchased at such sale would get a good title.   Upon the last trial of the case it was proved that upon a sheriff's sale of the interest of James Mattoon, who held under a conveyance from John Mattoon, his father; that Cooke, the purchaser of the interest of the said James Mattoon at said sale, asked John Mattoon, who was present, what interest he had in the premises, and John replied that he had given James a deed, but had a life interest ; that James had not complied with the conditions of his agreement, and that he, Cooke, would get a good title if he had a sheriff's deed.   Cooke then told the sheriff to sell, which he did, and Cooke became the purchaser and received the usual certificate of sale from the sheriff.

It was also proved that the certificate of sale was assigned to one Sherwin, who received the sheriff's deed, and took possession of the premises ; that Sherwin negotiated with one Willard for a sale of the premises, and, pending the negotiations, Willard having refused to purchase until he could interview said John Mattoon, he and his wife and Sherwin met Mattoon, who stated, among other things, that if they bought of Sherwin the title would be good ; that he had no rights or interests except the rents, and that he had no interest after his death, except that his wife had the use of fifteen acres after one year from his death.   The referee found that Cooke was not induced or influenced to bid by the reply of Mattoon to Cooke at the sheriff's sale.   He also found that Willard relied upon the declarations made by John Mattoon to him and wife and Sherwin, and was induced thereby to purchase, and did purchase the premises, and by said declarations all of said plaintiffs, except the widow, were estopped from asserting their title.

The referee having found that Cooke was not induced or influenced to bid by reason of the declarations made by Mattoon at the sheriff's sale and based his conclusion entirely upon the ground that the subsequent declarations constituted an estoppel, it is only necessary to consider whether the statements then made precluded a recovery by the plaintiffs as found by him. The principle upon which an estoppel *in pais* is founded is quite familiar. The admission must have been made or the act done with the intention of influencing the conduct of another, and the other party must have acted upon or been influenced by the declaration or act. *Brown* v. *Bowen*, 30 N. Y. 519. It must also be shown that the act, declaration or omission out of which the estoppel arises influenced the conduct of the other party, or that he took action in the matter in reliance thereon. *Malloney* v. *Horan*, 49 N. Y. 111. As Willard was not sworn upon the trial there is no direct proof that he was influenced by the declarations of Mattoon. But taking into consideration, that he refused to make the trade until he received information from John Mattoon that he would acquire a good title if he bought of Sherwin, and that he thereupon purchased at the full value, receiving only a quit-claim deed, it is a fair and legitimate inference that he was induced to make the purchase relying upon the representations made. Such inferences are often quite as conclusive and controlling as if positive testimony is given, and I think warranted the conclusion at which the referee arrived. This view is supported by the opinion of the court of appeals in the case, and it was there said that the testimony offered would have shown an estoppel, and that such an inference might be drawn from the same. It is true that the referee came to a different conclusion as to the declarations made at the sheriff's sale, but this does not affect the principle decided.

The question then remains whether the misapprehension of the legal effect of the agreement by Willard weakens and destroys the effect of the declarations and representations made by John Mattoon. It does not impair the effect of the estoppel because Mattoon was mistaken as to the import of the instrument. *Storrs* v. *Barker*, 6 Johns. Ch. 166; *Tilton* v. *Nelson*, 27 Barb. 595; *Garnar* v. *Bird*, 57 id. 277. But a different question arises where the party, acting upon the representations made, has an opportunity to know and understand, and fails to avail himself of it. The rule is laid down in Herman on Estoppel, § 331, that where both parties

know, or have *the means of knowing*, and each is equally in fault, neither can have an equitable claim to relief against the other. It appears that the agreement was read in the presence of Willard, and the presumption is that he heard it read. If he did thus hear it read, it was not the fault of John Mattoon that he did not understand it. Even if it were difficult of comprehension, except to those familiar with the rules of interpretation applicable to instruments of such a character, I do not well see how a party can be excused from understanding its true import and meaning. As the agreement itself showed what title James Mattoon had, it cannot be urged that he had any other, and the testimony establishes that John Mattoon referred to the written agreement. In *Storrs* v. *Barker, supra,* although the purchaser may have known that the law was that the will of a *feme covert* devising real estate was void, the question now considered was not passed upon and we have not been referred to any case which holds that ignorance of the effect of an agreement exhibited to a party will justify him in relying upon mere verbal statements to the contrary, which of themselves and independent of other circumstances, would create an estoppel. Nor am I prepared to say that this is a case where the defendant can invoke the rule that where it is unconscientious for a party to avail himself of a mistake of law an exception lies to the rule *ignorantia juris non excusat.* It would be somewhat dangerous to hold that a legal title can be defeated by proof of declarations made upon which it is claimed a party acted, when that party had full opportunity to learn and comprehend what the legal title was. Such a rule would be calculated to impair the effect of written contracts and lead to confusion and looseness in the acquirement of title to lands.

My opinion is that the referee was wrong in this respect, and for that reason the judgment must be reversed and a new trial granted, with costs to abide the event.

*Judgment affirmed.*